E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0721
    Facsimile: (213) 894-0141
    E-mail:    john.lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>BRYANT RIVERA,<br>  aka "Eduardo,"<br><br>      A Fugitive from the<br>      Government of the<br>      United Mexican States. | No. 2:23-CV-08153-MCS-KS<br><br><u>UNITED STATES' OPPOSITION TO</u><br><u>FUGITIVE'S MOTION TO COMPEL</u><br><u>DISCOVERY; DECLARATION OF</u><br><u>JOHN J. LULEJIAN; EXHIBIT</u><br><br>Hearing Date: December 7, 2023<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the<br>          Hon. Karen L.<br>          Stevenson |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney John J. Lulejian, hereby files its Opposition to Fugitive's Motion to Compel Discovery.

\\

\\

\\

\\

\\

\\

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 16, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


*/s/ John J. Lulejian*
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                 PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   ARGUMENT.....................................................2

      A.    RIVERA Has No Right to Discovery Because Fugitives in
            Extradition Proceedings Do Not Have *Brady* or Other
            Criminal Discovery Rights...............................2

      B.    RIVERA's "Due Process" Claim Is Meritless...............7

      C.    The Court Does Not Have Unbridled Discretion to Grant
            Discovery..............................................11

            1.    A Court May Order Limited Discovery Only if it
                  Will Appreciably Advance the Resolution of a
                  Contested Issue and Not Convert the Extradition
                  Proceedings into a Dress Rehearsal Trial.........11

            2.    RIVERA's Discovery Requests Fail to Appreciably
                  Advance This Court's Probable Cause Determination...13

      D.    RIVERA's Discovery Demands Should Be Denied Because
            They Are Overbroad and Not Relevant to the Court's
            Determination of Probable Cause .......................16

      E.    The Court Should Not Vacate the Extradition Hearing
            Date or the Briefing Schedule..........................18

III.  CONCLUSION..................................................19

CERTIFICATE OF COMPLIANCE............................................20

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

FEDERAL CASES

Atuar v. United States,
    156 F. App'x 555 (4th Cir. 2005) ............................... 7

Barapind v. Enomoto,
    400 F.3d 744 (9th Cir. 2005) (en banc) ....................... 12

Boumediene v. Bush,
    553 U.S. 723 (2008) ........................................... 8

Brady v. Maryland,
    373 U.S. 83 (1963) ....................................... passim

Caplan v. Vokes,
    649 F.2d 1336 (9th Cir. 1981) ................................. 4

Charlton v. Kelly,
    229 U.S. 447 (1913) ........................................... 2

Collins v. Loisel,
    259 U.S. 309 (1922) .......................................... 17

Demjanjuk v. Petrovsky,
    10 F.3d 338 (6th Cir. 1993) ........................... 5, 6, 16

Dent v. Holder,
    627 F.3d 365 (9th Cir. 2010) .................................. 8

Dhiab v. Bush,
    No. 05-1457(GK), 2008 WL 4905489
    (D.D.C. Nov. 17, 2008) ....................................... 8

Doe v. Mattis,
    928 F.3d 1 (D.C. Cir. 2019) .................................. 8

Emami v. U.S. Dist. Ct.,
    834 F.2d 1444 (9th Cir. 1987) ................................. 3

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

Escobedo v. United States,
  623 F.2d 1098 (5th Cir. 1980) ................................. 7

Gill v. Imundi,
  747 F. Supp. 1028 (S.D.N.Y. 1990) ......................... 3, 12

Glucksman v. Henkel,
  221 U.S. 508 (1911) ........................................... 4

Hamdi v. Rumsfeld,
  542 U.S. 507 (2004) ........................................... 8

Hilton v. Kerry,
  754 F.3d 79 (1st Cir. 2014) ................................ 9, 10

In re Extradition of Aguasvivas,
  No. 17-mj-4218, 2018 WL 3614137
  (D. Mass. July 27, 2018) ..................................... 16

In re Extradition of Ameen,
  378 F. Supp. 3d 902 (E.D. Cal. 2019) ......................... 4

In re Extradition of Atias to Israel,
  916 F. Supp. 2d 915 (E.D. Mo. 2012) ......................... 13

In re Extradition of Burt
  737 F.2d 1477 (7th Cir. 1984) ............................. 8, 10

In re Extradition of Drayer,
  190 F.3d 410 (6th Cir. 1999) .............................. 5, 6

In re Extradition of Koskotas,
  127 F.R.D. 13 (D. Mass. 1989) ................................ 5

In re Extradition of Kraiselburd,
  786 F.2d 1395 (9th Cir. 1986) ............................ 3, 16

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

In re Extradition of Manzi,

  888 F.2d 204 (1st Cir. 1989) ................................. 10

In re Extradition of Martinelli Berrocal,

  No. 17-22197, 2017 WL 3776953

  (S.D. Fla. Aug. 31, 2017) ..................................... 8

In re Extradition of Martinez,

  No. 3:13-MJ-2042, 2013 WL 6028314

  (M.D. Tenn. Nov. 13, 2013) ................................... 6

In re Extradition of McMullen,

  989 F.2d 603 (2d Cir. 1993) .................................. 7

In re Extradition of Powell,

  4 F. Supp. 2d 945 (S.D. Cal. 1998) ........................... 3

In re Extradition of Singh,

  123 F.R.D. 108 (D.N.J. 1987) .............................. 5, 13

In re Extradition of Zhenly Ye Gon,

  613 F. Supp. 2d 92 (D.D.C. 2009) ............................. 2

In re Extradition of Zhenly Ye Gon,

  No. 08-596 (JMF), 2010 WL 169468

  (D.D.C. Jan. 8, 2010) ........................................ 6

In re Petition of Geisser,

  627 F.2d 745 (5th Cir. 1980) ................................ 10

In re Requested Extradition of Sindona,

  450 F. Supp. 672 (S.D.N.Y. 1978) ............................. 6

Jhirad v. Ferrandina,

  536 F.2d 478 (2d Cir. 1976) .................................. 7

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

Lopez-Smith v. Hood,
  121 F.3d 1322 (9th Cir. 1997) ................................. 10

MacKenzie v. Cal. Att'y Gen.,
  No. SACV 12-432 VBF (JC), 2016 WL 5334479
  (C.D. Cal. Apr. 11, 2016) ..................................... 4

Man-Seok Choe v. Torres,
  525 F.3d 733 (9th Cir. 2008) ................................. 12

Mathews v. Eldridge,
  424 U.S. 319 (1976) .......................................... 9

Merino v. United States Marshal,
  326 F.2d 5 (9th Cir. 1963) ................................. 2, 4

Montemayor Seguy v. United States,
  329 F. Supp. 2d 883 (S.D. Tex. 2004) ......................... 5

Neely v. Henkel,
  180 U.S. 109 (1901) ........................................ 4, 7

Noeller v. Wojdylo,
  922 F.3d 797 (7th Cir. 2019) ................................. 18

North River Ins. Co. v. Columbia Cas. Co.,
  No. 90-cv-2518, 1995 WL 338296
  (S.D.N.Y. June 7, 1995) ...................................... 16

Oen Yin-Choy v. Robinson,
  858 F.2d 1400 (9th Cir. 1988) ............................. 2, 16

Peryea v. United States,
  782 F. Supp. 937 (D. Vt. 1991) ............................ 3, 12

Plaster v. United States,
  720 F.2d 340 (4th Cir. 1983) ................................. 10

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

Prasoprat v. Benov,

  421 F.3d 1009 (9th Cir. 2005) ................................. 12

Quinn v. Robinson,

  783 F.2d 776 (9th Cir. 1986) ............................. 3, 12

Romeo v. Roache,

  820 F.2d 540 (1st Cir. 1987) ................................. 10

Sacirbey v. Guccione,

  No. 05 CV. 2949 BSJ FM, 2006 WL 2585561

  (S.D.N.Y. Sept. 7, 2006) ..................................... 5

Santos v. Thomas,

  830 F.3d 987 (9th Cir. 2016) (en banc) ....................... 18

Shapiro v. Ferrandina,

  478 F.2d 894 (2d Cir. 1973) .................................. 18

Sridej v. Blinken,

  No. 2:23-cv-00114-ART-BNW, 2023 WL 4421376

  (D. Nev. July 10, 2023) ...................................... 9

Toledo v. U.S. Dep't of State,

  No. CV 23-627 (BAH), 2023 WL 2663016

  (D.D.C. Mar. 28, 2023) ....................................... 9

United States v. Mandel,

  914 F.2d 1215 (9th Cir. 1990) ................................ 13

United States v. Santiago,

  46 F.3d 885 (9th Cir. 1995) .................................. 13


FEDERAL STATUTES

18 U.S.C. § 3184 ........................................... 7, 8

1

**TABLE OF AUTHORITIES (CONTINUED)**

2
DESCRIPTION                                                        PAGE

3

4
FEDERAL RULES

5
Fed. R. Crim. P. 1(a)(5)(A) ................................... 2, 11

6
Fed. R. Crim. P. 16 ............................................. 11

7

8
TREATIES

9
Extradition Treaty Between the United States of America and

10
      the United Mexican States, U.S.-Mex., May 4, 1978,

11
      31 U.S.T. 5059, as amended by the Protocol to the

12
      Extradition Treaty Between the United States of America

13
      and the United Mexican States of May 4, 1978, U.S.-Mex.,

14
      Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998) ........... 1, 2

15
Treaty on Cooperation Between the United States of America and the

16
      United Mexican States for Mutual Legal Assistance, U.S.-Mex.,

17
      Dec. 9, 1987, S. Treaty Doc. No. 100-13 (1988) ......... 14, 15

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Government of the United Mexican States ("Mexico") is prosecuting fugitive BRYANT RIVERA, also known as "Eduardo" ("RIVERA" or "fugitive"), under its domestic law prohibiting femicide, also referred to as feminicide, committed on its soil.  On September 1, 2023, Mexico submitted a formal request to the United States, pursuant to the U.S.-Mexico extradition treaty,  to extradite RIVERA for two counts of femicide.[1]  The Court has scheduled RIVERA's extradition hearing for February 14, 2024.

RIVERA asserts that he is entitled to broad discovery, similar to what might be produced in a domestic criminal prosecution. However, his assertion is contrary to Ninth Circuit precedent and meritless.

In the Ninth Circuit, fugitives such as RIVERA have no constitutional rights to discovery in an extradition proceeding because such a proceeding is not a criminal case, and there is no adjudication of the fugitive's guilt.  Thus, he is not entitled to discovery under the Fifth or Sixth Amendments or the Federal Rules of Criminal Procedure.  Nor is he entitled to such discovery under <u>Brady v. Marlyand</u>, 373 U.S. 83 (1963).  Further, RIVERA's claim that this Court has unbridled discretion to grant discovery is meritless. Rather, the Court may grant discovery only where the fugitive has shown that the requested materials will appreciably advance the

---

[1] Extradition Treaty Between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, <u>as amended by</u> the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, U.S.-Mex., Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998) (collectively the "Treaty").

1

resolution of a contested issue that is properly before it, something

RIVERA has not done.  Moreover, the discovery RIVERA demands is

overly broad, barred from production by treaty, and/or not relevant

to the Court's probable cause determination.

Because RIVERA seeks discovery to which he is not entitled, his

demands should be denied in their entirety.  Further, there is no

reason to vacate the date of the agreed upon extradition hearing or

stipulated briefing schedule.

## II.  ARGUMENT

### A.  RIVERA Has No Right to Discovery Because Fugitives in Extradition Proceedings Do Not Have *Brady* or Other Criminal Discovery Rights

As an extradition proceeding is not a criminal proceeding, a

fugitive has no right to discovery.  See, e.g., Charlton v. Kelly,

229 U.S. 447, 462 (1913); Oen Yin-Choy v. Robinson, 858 F.2d 1400,

1407 (9th Cir. 1988); Merino v. United States Marshal, 326 F.2d 5,

12-13 (9th Cir. 1963); see also, e.g., In re Extradition of Zhenly Ye

Gon, 613 F. Supp. 2d 92, 101-02 (D.D.C. 2009) ("[I]t cannot be

suggested that an American defendant is entitled to discovery before

a preliminary hearing or before the presentation of evidence against

him to a grand jury.  Yet, if a defendant whose extradition is sought

gets such discovery, he would be accorded a right that is not

available to him under American law.") (internal footnote omitted).[2]

---

[2] Because of the limited nature of extradition proceedings,
there is typically no "discovery" other than the provision of the
formal extradition request with supporting exhibits from the
requesting country.  Federal Rule of Criminal Procedure 1(a)(5)(A)
specifically exempts extradition proceedings from the criminal
discovery rules, and there is no explicit statutory basis for
ordering discovery in extradition proceedings, Oen Yin-Choy, 858 F.2d
at 1407.  There is also nothing in the Treaty that independently
*(footnote cont'd on next page)*

2

1    Rather, discovery in extradition proceedings should be "limited
2    and lies exclusively within the discretion of the [extradition]
3    magistrate."  In re Extradition of Kraiselburd, 786 F.2d 1395, 1399
4    (9th Cir. 1986).  The Ninth Circuit has noted that, "[i]n exercising
5    discretion, the magistrate should consider both the well-established
6    rule that extradition proceedings are not to be converted into a
7    dress rehearsal trial, . . . and whether the resolution of the
8    contested issue would be appreciably advanced by the requested
9    discovery."  Quinn v. Robinson, 783 F.2d 776, 817 n. 41 (9th Cir.
10    1986) (internal citations and quotation marks omitted).  Furthermore,
11    even though a fugitive "may offer what has been called 'explanatory
12    testimony,' the law 'nowhere requires a magistrate to authorize
13    compelled disclosure of sources of such explanatory testimony.'"
14    Peryea v. United States, 782 F. Supp. 937, 939-40 (D. Vt. 1991)
15    (citing Gill v. Imundi, 747 F. Supp. 1028, 1040 (S.D.N.Y. 1990)); see
16    also, e.g., Emami v. U.S. Dist. Ct., 834 F.2d 1444, 1452 (9th Cir.
17    1987) (no abuse of discretion where extradition court denied
18    discovery sought to "explain" certain evidence, despite fugitive's
19    argument that "he was entitled to present evidence explaining the
20    charges against him"); In re Extradition of Powell, 4 F. Supp. 2d
21    945, 960 (S.D. Cal. 1998) (denying request for discovery where
22    fugitive argued only that such discovery "would assist her in
23    explaining the elements in the case against her") (internal quotation
24    marks omitted).
25    The Ninth Circuit has unequivocally determined that the
26    principles set forth in Brady "are not applicable to a preliminary
27
28    requires or authorizes general discovery, or that entitles RIVERA to
      receive any evidence other than the documents that the Treaty
      requires Mexico to provide.

3

examination in an international extradition case." Merino, 326 F.2d
at 13; see also, e.g., In re Extradition of Ameen, 378 F. Supp. 3d
902, 910 (E.D. Cal. 2019) ("In [Merino], the Ninth Circuit held that
Brady is not applicable to international extradition hearings
. . . ."); MacKenzie v. Cal. Att'y Gen., No. SACV 12-432 VBF (JC),
2016 WL 5334479, at *16 n.17 (C.D. Cal. Apr. 11, 2016) (citing Merino
for proposition that "Brady does not apply to international
extradition cases").  The Ninth Circuit later reinforced its decision
in Merino by recognizing that a fugitive "has no absolute right to
introduce exculpatory evidence and the government has no duty to do
so." Caplan v. Vokes, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981).

The Ninth Circuit's refusal to extend Brady rights to fugitives
aligns with well-established Supreme Court precedent holding that
fugitives are not entitled to the constitutional protections afforded
to criminal defendants in domestic cases.  Glucksman v. Henkel, 221
U.S. 508, 512 (1911) (Holmes, J.) ("It is common in extradition cases
to attempt to bring to bear all the factitious niceties of a criminal
trial at common law.  But it is a waste of time."); see also, e.g.,
Neely v. Henkel, 180 U.S. 109, 122 (1901) ("Allusion is here made to
the provisions of the Federal Constitution relating to the writ of
habeas corpus, bills of attainder, ex post facto laws, trial by jury
for crimes, and generally to the fundamental guaranties of life,
liberty, and property embodied in that instrument.  The answer to
this suggestion is that those provisions have no relation to crimes
committed without the jurisdiction of the United States against the
laws of a foreign country.").  Moreover, Brady, by its terms, applies
only in the context of criminal trials in which the defendant's guilt
or innocence is being adjudicated.  See 373 U.S. at 1197; see also,

4

1  e.g., United States v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010)

2  ("[t]he Brady right . . . is a trial right") (emphasis in original).

3  It thus does not apply in the context of an extradition proceeding,

4  which does not involve a criminal trial.[3]

5      RIVERA's claim that the United States should be compelled to

6  produce exculpatory material based on the Sixth Circuit's decision in

7  Demjanjuk v. Petrovsky, 10 F.3d 338, 353 (6th Cir. 1993) – which was

8  subsequently limited by In re Extradition of Drayer, 190 F.3d 410,

9  414 (6th Cir. 1999) - is misplaced.  Even if these out-of-circuit

10  cases were binding within the Ninth Circuit, the Sixth Circuit has

11  extended Brady rights to fugitives only in the limited context where

12  "the United States ha[s] conducted its own investigation of the

13  offense underlying the request for extradition and uncovered

14  exculpatory material in the course of that effort."  Drayer, 190 F.3d

15  at 414; see Demjanjuk, 10 F.3d at 353-54.[4]  Here, however, the

16

17      [3] Other courts have also refused to extend Brady to extradition
proceedings.  See, e.g., Sacirbey v. Guccione, No. 05 CV. 2949 BSJ

18  FM, 2006 WL 2585561, at *14 (S.D.N.Y. Sept. 7, 2006), rev'd on other
grounds, 589 F.3d 52 (2d Cir. 2009) (rejecting fugitive's argument

19  that "information he requested should have been produced as
exculpatory evidence under the principles articulated in Brady v.

20  Maryland," and noting that "the Court is skeptical that [Brady] does
or should [apply in the extradition context]"); Montemayor Seguy v.

21  United States, 329 F. Supp. 2d 883, 888 (S.D. Tex. 2004) ("[A]n
extradition is not a criminal prosecution. . . .  The potential trial

22  will occur in Mexico, leaving pretrial discovery issues for the
Mexican courts to decide.  The extradition law, the extradition

23  treaty, and the United States Constitution do not require production
of exculpatory evidence at an extradition hearing.") (internal

24  citation omitted); In re Extradition of Koskotas, 127 F.R.D. 13, 27
(D. Mass. 1989) ("Courts have expressly held that Brady principles do

25  not pertain to extradition hearings because no determination of guilt
or innocence is being made."); In re Extradition of Singh, 123 F.R.D.

26  108, 112 (D.N.J. 1987) ("[A]n extradition proceeding is not a
criminal prosecution," and, "since there will not be a trial in the

27  United States, Brady is inapplicable.").

      [4] The exculpatory material that the Sixth Circuit determined to

28  be discoverable related to information in the government's possession
*(footnote cont'd on next page)*

United States has not conducted its own investigation into RIVERA;
the only investigation into RIVERA's alleged criminal conduct is
Mexico's.  The mere fact that U.S. law enforcement provided limited
information to its Mexican counterparts or that the United States
fulfilled its treaty obligations and obtained telephone records or
executed a search warrant pursuant to valid mutual legal assistance
requests does not transform this case into a parallel domestic
investigation.  Moreover, these Sixth Circuit cases do not afford a
broad right to all exculpatory materials but rather only "exculpatory
materials in [the U.S. government's] possession that would undercut a
finding" of probable cause.  <u>Drayer</u>, 190 F.3d at 415; <u>see also</u> <u>In re
Extradition of Martinez</u>, No. 3:13-MJ-2042, 2013 WL 6028314, at *2
(M.D. Tenn. Nov. 13, 2013); <u>In re Zhenly Ye Gon</u>, No. 08-596(JMF),
2010 WL 169468, at *3-4 (D.D.C. Jan. 8, 2010) (distinguishing between
"exculpatory evidence" and "evidence that would negate probable
cause," and only ordering the government to produce "any evidence
within its possession that would negate the showing of probable cause
that the Mexican government has offered"); <u>In re Requested
Extradition of Sindona</u>, 450 F. Supp. 672, 687 (S.D.N.Y. 1978) (noting
that "exculpatory proof" was not admissible because it did "not
negate the probable cause showing of the Italian government, or in
any way indicate that it would be unjust to require [the fugitive] to
respond to criminal charges in Italy").

Regardless, no other circuit court — let alone the Ninth Circuit
— has adopted the Sixth Circuit's reasoning in any subsequent
extradition case.  Accordingly, under the controlling Ninth Circuit

regarding the fugitive's claim that he had been the victim of
misidentification.  <u>Demjanjuk</u>, 10 F.3d at 350-52.

1   authority, RIVERA does not have a right to discovery in an

2   extradition proceeding.  Thus, all requests for discovery pursuant to

3   Brady, or based on any other rights possessed by criminal defendants

4   in domestic cases, should be denied.

5       **B.    RIVERA's "Due Process" Claim Is Meritless**

6       While a fugitive has certain due process rights in an

7   extradition proceeding, those rights are highly circumscribed, as

8   extradition proceedings do not involve a determination of guilt or

9   innocence.  See Neely, 180 U.S. at 122; Jhirad v. Ferrandina, 536

10  F.2d 478, 482 (2d Cir. 1976); Atuar v. United States, 156 F. App'x

11  555, 562 (4th Cir. 2005). In terms of the due process requirements

12  triggered at an extradition proceeding, a fugitive is entitled to the

13  guarantees of 18 U.S.C. § 3184, namely, "notice in the form of a

14  'complaint . . .' as well as a hearing at which 'evidence of

15  criminality may be heard and considered.'" In re Extradition of

16  McMullen, 989 F.2d 603, 612 (2d Cir. 1993) ("Before [a] determination

17  [regarding surrender] is made, [a fugitive] is entitled to the due

18  process protections of an extradition proceeding, including notice in

19  the form of a 'complaint . . .' as well as a hearing at which

20  'evidence of criminality may be heard and considered.'") (quoting 18

21  U.S.C. § 3184); see also Escobedo v. United States, 623 F.2d 1098,

22  1105 (5th Cir. 1980) (stating that "[t]hese statutory provisions [set

23  forth in 18 U.S.C. § 3184] safeguard the fugitive's due process

24  rights"). The full panoply of due process rights available to

25  criminal defendants is not available to fugitives because an

26  extradition proceeding culminates in a "surrender" to the foreign

27  government, rather than in criminal punishment of any sort. Id.

28

7

In general, during extradition proceedings, "[d]ue process is not violated 'so long as the United States has not breached a specific promise to an accused regarding his or her extradition, and bases its extradition decisions on diplomatic considerations without regard to such constitutionally impermissible factors as race, color, sex, national origin, religion, or political beliefs, and in accordance with such other exceptional constitutional limitations as may exist because of particularly atrocious procedures or punishments employed by the foreign jurisdiction.'"  In re Extradition of Martinelli Berrocal, No. 17-22197, 2017 WL 3776953, at *27 (S.D. Fla. Aug. 31, 2017) (quoting In re Extradition of Burt, 737 F.2d 1477, 1487 (7th Cir. 1984) (internal citations omitted)).

In this case, there is no dispute that RIVERA's arrest for purposes of extradition was obtained by way of complaint, or that an extradition hearing will occur before a magistrate judge, as 18 U.S.C. § 3184 provides.

The fact that the Court will hold an extradition hearing distinguishes this case from the enemy combatant cases on which RIVERA relies.  In those cases, the courts were concerned about the classification of individuals as enemy combatants or their transfer without the involvement of the judiciary.  See Boumediene v. Bush, 553 U.S. 723 (2008); Hamdi v. Rumsfeld, 542 U.S. 507 (2004) (plurality); Doe v. Mattis, 928 F.3d 1 (D.C. Cir. 2019); Dhiab v. Bush, No. 05-1457(GK), 2008 WL 4905489, *1 (D.D.C. Nov. 17, 2008). Here, in contrast, both the Court and RIVERA Court have access to the information upon which RIVERA's extradition is sought.  The instant case is therefore distinguishable from Dent v. Holder, 627 F.3d 365 (9th Cir. 2010), where neither an immigration judge nor an alien had

access to the alien's A-file.  See Sridej v. Blinken, No. 2:23-cv-00114-ART-BNW, 2023 WL 4421376, *6 (D. Nev. July 10, 2023) ("Here, [fugitive's] liberty interests are protected by the very existence of 'an unbiased hearing before an independent judiciary.'") (internally quoting In re Kaine, 55 U.S. (14 How.) 103 (1852)).[5]

RIVERA is receiving all the due process to which the law entitles him.  This Court should therefore reject RIVERA's attempt to claim more due process than what the law provides.  See Hilton v. Kerry, 754 F.3d 79, 87 (1st Cir. 2014) ("No case law suggests that courts have the authority to go beyond the limited statutorily prescribed inquiry [to consider a due process claim] when the extradition itself is the only action challenged.") (internal quotation marks and citation omitted). In fact, courts repeatedly have declined to expand the scope of due process that applies in international extradition proceedings. See, e.g., In re Extradition

---

[5] Likewise, while RIVERA asserts that this Court should apply the balancing test the Supreme Court set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), he fails to cite any case – and the government is unaware of any – in which a court adjudicating a fugitive's motion to compel discovery in extradition proceedings has done so.  See Sridej, 2023 WL 4421376, *6 (D. Nev. July 10, 2023) (noting, contrary to fugitive's invitation to apply Mathews, that a fugitive's "liberty interests are protected by the very existence of 'an unbiased hearing before an independent judiciary.'") (internally quoting In re Kaine, 55 U.S. (14 How.) 103 (1852)); cf. Toledo v. U.S. Dep't of State, No. CV 23-627 (BAH), 2023 WL 2663016, at *8 (D.D.C. Mar. 28, 2023) (rejecting fugitive's claim to additional due process rights under Mathews, noting that "courts to have considered the totality of the United States' extradition process have easily concluded that this combination of the judicial and executive branch proceedings comports with the requirements of the Fifth Amendment . . . ." (citations omitted)).  If, however, this Court is inclined to apply the Mathews balancing test, the government is prepared to submit supplemental briefing concerning why the Mathews factors warrant denying the instant motion.

of Manzi, 888 F.2d 204, 206 (1st Cir. 1989) (finding that fugitive's claims did not raise due process claims warranting review); Romeo v. Roache, 820 F.2d 540, 543-44 (1st Cir. 1987) (rejecting fugitive's argument that "elemental due process is violated when a person lacking the capacity . . . to participate effectively in [an extradition proceeding] is certified as extraditable"); Lopez-Smith v. Hood, 121 F.3d 1322, 1324 (9th Cir. 1997) ("Criminal trial of an incompetent defendant violates his constitutional right to due process of law.  This principle, though, does not apply to [the fugitive], because if extradited he will not be subject to a criminal trial in the United States.  His trial will be in Mexico.  That sovereign nation has its own constitution and is not bound by ours.") (citations omitted); Burt, 737 F.2d at 1482-87 (rejecting claims that considerable delay in extradition violated due process).  The rare cases in which courts have found due process violations involved United States action "apart from the act of extradition itself." Hilton, 754 F.3d at 87 (finding no due process violation where fugitive challenged U.S. actions in pursuing his extradition despite his claim that the conditions in the requesting country would have deleterious effects on his mental health); see Plaster v. United States, 720 F.2d 340, 348 & 350-51 (4th Cir. 1983) (remanding extradition case for consideration of due process claim based on government's violation of immunity agreement); In re Petition of Geisser, 627 F.2d 745, 750 (5th Cir. 1980) (finding that noncompliance with plea bargain is valid constitutional claim that may be raised to challenge extradition proceedings and that "a purported treaty obligation of the United States government cannot

override an individual constitutional right").  RIVERA has alleged no

comparable government action in this case.

Accordingly, RIVERA's "due process" claim is meritless.

**C.    The Court Does Not Have Unbridled Discretion to Grant
Discovery**

Notwithstanding the foregoing, RIVERA asks this Court to compel

discovery under its inherent discretionary authority.  (<u>See</u> Dkt. 33

at 11.)  However, the categories of discovery that RIVERA seeks are

tantamount to what one would see in a domestic criminal case.[6]  As

these categories are not relevant to the limited findings that this

Court must make, do not appreciably advance the resolution of

probable cause, and risk converting the extradition hearing into a

dress rehearsal for trial, RIVERA's motion should be denied.

1.    <u>A Court May Order Limited Discovery Only if it Will
Appreciably Advance the Resolution of a Contested
Issue and Not Convert the Extradition Proceedings into
a Dress Rehearsal Trial</u>

As detailed above, the Ninth Circuit has stated that the

judicial officer conducting an extradition hearing has inherent

authority to order discovery "as law and justice require."  <u>Oen Yen-</u>

<u>Choy</u>, 858 F.2d at 1407.  But the exercise of such discretion is

constrained by the narrow scope of an extradition hearing.  As the

Ninth Circuit explained,

> In exercising discretion [to order discovery], the
> magistrate should consider both the well-established rule

---

[6] For example, some of RIVERA's demands refer to "trial" or
"grand jury," the hallmarks of a criminal case.  Further, while
RIVERA attempts to couch his requests as applying to the "probable
cause hearing," in reality he tracks the discovery requirements of
Rule 16 of the Federal Rules of Criminal Procedure, which do not
apply to extradition cases.  <u>See</u> Fed. R. Crim. P. 1(a)(5)(A)
("Proceedings not governed by these rules include . . . the
extradition and rendition of fugitives.").

that extradition proceedings are not to be converted into a dress rehearsal trial, and whether the resolution of the contested issue would be appreciably advanced by the requested discovery.

Quinn, 783 F.2d at 817 n. 41.

Accordingly, the Ninth Circuit and other courts have denied discovery that threatened to convert the extradition proceeding into a mini-trial or otherwise related to issues that exceeded the scope of the extradition hearing.  For example, in Man-Seok Choe v. Torres, the Ninth Circuit found no error in the denial of discovery on a credibility issue in an extradition case:  "Choe further contends that the magistrate judge erred by refusing to allow him to conduct discovery on [witness's] credibility, but this wasn't error because any such evidence wouldn't be admissible."  525 F.3d 733, 740 (9th Cir. 2008).  There, the Ninth Circuit reasoned that an allegation of a lack of credibility is "merely a weakness in [the requesting country's] case; it does not 'completely obliterate[]' the evidence of probable cause."  Choe, 525 F.3d at 740 (citing Barapind v. Enomoto, 400 F.3d 744, 749 (9th Cir. 2005) (en banc) (per curiam); see also Prasoprat v. Benov, 421 F.3d 1009, 1014-15 (9th Cir. 2005) (where proposed topic of discovery does not "relate to an issue within the scope of the magistrate judge's authority to examine," it is not an abuse of discretion to deny discovery on that topic); Peryea, 782 F. Supp. at 940 ("While the accused may offer what has been called 'explanatory testimony,' the law nowhere requires a magistrate to authorize compelled disclosure of sources of such explanatory testimony.  Thus in Gill [v. Imundi] the extradition magistrate acted within his discretion in declining to [compel discovery] at risk of converting the extradition hearing into a dress

rehearsal trial.") (internal quotation marks and citations omitted);
In re Extradition of Singh, 123 F.R.D. 108, 113-15 (D.N.J. 1987) ("To
permit extensive discovery . . . raises the concern . . . that a
government seeking extradition might be compelled to, in effect, try
its case against a defendant here. . . . Given the foregoing, and the
implications for our foreign relations, the Court is satisfied that
it should not permit discovery through the exercise of inherent
power."); In re Extradition of Atias to Israel, 916 F. Supp. 2d 915,
930 (E.D. Mo. 2012) (denying requests for discovery of "items
relate[d] to issues of a defense to the charges or the credibility of
the [requesting country's] evidence").

> 2.    RIVERA's Discovery Requests Fail to Appreciably
>        Advance This Court's Probable Cause Determination

Here, RIVERA fails to explain how the wide-ranging discovery he
seeks would be relevant to this Court's probable cause determination
given the limitations on evidence that he may present at the
extradition hearing.  Thus, it would be unprecedented and error for
the Court to order discovery without first requiring RIVERA to
explain in detail how the sought discovery not only be admissible in
the context of an extradition hearing, but also impacts the Court's
limited analysis.  Even in the context of domestic criminal cases, a
defendant's discovery requests must be supported by a "presentation
of facts which would tend to show that the Government is in
possession of information helpful to the defense." United States v.
Santiago, 46 F.3d 885, 894 (9th Cir. 1995); United States v. Mandel,
914 F.2d 1215, 1219 (9th Cir. 1990) ("Neither a general description
of the information sought nor conclusory allegations of materiality
suffice; a defendant must present facts which would tend to show that

1  the Government is in possession of information helpful to the

2  defense.").  RIVERA's motion therefore must be denied.

3      RIVERA's demands (Demands I and II) include "[d]iscovery related

4  to searches of [his] person, residence, automobile, or other

5  property."  (Dkt. 33-3 at 4.)  He also demands "[e]vidence provided

6  to Mexico by the United States of America," including "any evidence

7  provided pursuant to any request for mutual legal assistance prior to

8  such request for extradition."  (Id.)

9      These demands must fail because they are premised on RIVERA's

10  mistaken belief that the United States conducted an independent

11  investigation of him – something that is not true.  Mexican

12  authorities were the only entity that investigated and are

13  prosecuting RIVERA for the two femicides.  The United States received

14  formal requests, pursuant to the mutual legal assistance treaty

15  between the United States and Mexico,[7] to obtain telephone records

16  from T-Mobile and to execute a search at RIVERA's residence.  The

17  United States complied with those requests independently of the

18  extradition request.  As its name suggests, the Mutual Legal

19  Assistance Treaty "is intended solely for mutual legal assistance

20  between the Parties."  Mutual Legal Assistance Treaty, art. 1(5)

21  (emphasis added).  In other words, it is solely "a mechanism for

22  government to government mutual assistance in criminal matters."

23  Letter of Transmittal of Treaty from the White House to the Senate of

24  the United States, Feb. 16, 1988 ("President's Letter").  Further,

25  "[t]he provisions of [the Mutual Legal Assistance] Treaty shall not

26

27      [7] See Treaty on Cooperation Between the United States of America
and the United Mexican States for Mutual Legal Assistance, U.S.-Mex.,
28  Dec. 9, 1987, S. Treaty Doc. No. 100-13 (1988) ("Mutual Legal
Assistance Treaty" or "MLAT"; copy attached hereto)

give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request."  Mutual Legal Assistance Treaty, art. 1(5); see also President's Letter ("[T]he Treaty is not intended to create rights in private parties either to gather evidence or secure other assistance or to suppress or exclude in civil or criminal proceedings evidence obtained under the Treaty.").  Moreover, the United States is required to "keep confidential a request and its contents unless otherwise authorized by [Mexico]."  Mutual Legal Assistance Treaty, art. 4(5).

In this case, Mexico has not provided such an authorization. Therefore, the United States is prohibited by the terms of the Mutual Legal Assistance Treaty from producing anything related to Mexico's mutual legal assistance request, other than what Mexico included in its submissions in support of the request for extradition.

With respect to discrete items provided between U.S. and Mexican law enforcement by letter and contained in electronic databases maintained by the United States (Demand XII), RIVERA fails to explain how the material underlying the provided information will advance the probable cause determination.  In fact, RIVERA ignores that Mexico cites the information it received in its extradition request, including screen shots from surveillance video of RIVERA at the San Ysidro Point of Entry.  RIVERA does not claim that he is the victim of mistaken identity, as did the fugitive in Demjanjunk.  Nor does he explain how the video, rather than a series of screen shots of him entering the United States shortly after the deaths of the victims, will advance the probable cause determination.  RIVERA  also fails to explain how his crossing histories, other than on the dates of the

femicides underlying the extradition request, are relevant to a determination of probable cause.  Further, RIVERA fails to explain why anything else is required for those documents sent to Mexico that include his driver's license photograph, vehicle registrations, and address.  Thus, these discovery demands do not appear to appreciably advance the Court's probable cause determination.

Accordingly, the Court should deny RIVERA's demands as irrelevant and inappropriate under the U.S.-Mexico Mutual Legal Assistance Treaty.

### D.    RIVERA's Discovery Demands Should Be Denied Because They Are Overbroad and Not Relevant to the Court's Determination of Probable Cause

In any event, RIVERA's motion should be denied because his requests are overbroad.  "It is not the role of the Court to drastically narrow discovery demands to their proper scope." North River Ins. Co. v. Columbia Cas. Co., No. 90-cv-2518, 1995 WL 338296, at *1 (S.D.N.Y. June 7, 1995); In re Extradition of Aguasvivas, No. 17-mj-4218, 2018 WL 3614137, at *8 (D. Mass. July 27, 2018) (denying discovery where "motion to compel make[s] no effort to accommodate the well-rehearsed boundaries of discovery in an extradition case.").  As such, his discovery requests contravene the Ninth Circuit's express and repeated instruction that any discovery in extradition proceedings must be limited so as not to convert such proceedings into a dress rehearsal for trial.  See e.g., Oen Yin-Choy, 858 F.2d at 1407; Kraiselburd, 786 F.2d at 1399.  Thus, RIVERA's discovery demands should be denied because they are not narrowly tailored to issues properly before this Court.

In addition to being overbroad, the remaining items RIVERA demands are not relevant to the Court's determination of probable cause.

For example, RIVERA demands evidence provided to the United States by Mexico that was not included in the formal extradition request (Demand III).  This request is overbroad because a country requesting extradition is not obligated to present all of its evidence for U.S. extradition proceedings, and extradition proceedings should not be a dress rehearsal trial.  See Collins v. Loisel, 259 U.S. 309, 316 (1992)  Moreover, the Court's probable cause determination will be based on the materials Mexico has submitted in support of extradition.

RIVERA's demand for discovery pertaining to statements he made to U.S. law enforcement and/or confidential informants (Demand IV) is overbroad because the United States is not aware of any statements that RIVERA made at the time of his arrest.  Further, Because Mexico is not relying on any statements RIVERA made at the time of his arrest, any such documents are neither relevant nor admissible.

RIVERA's demand for a "complete copy of [his] criminal history, including both state and federal 'rap sheets' or arrest records" (Demand V) is likewise overbroad and irrelevant to the Court's decision whether to certify him as extraditable.

RIVERA's demands pertaining to documents and tangible objects, examinations and tests, expert witnesses, and witnesses (Demands VI to IX) should be denied because they exceed the narrow scope of an extradition hearing.  To the extent that RIVERA seeks to challenge the credibility of any witness, the Ninth Circuit, consistent with other circuits, has held that credibility determinations are outside

the scope of an extradition proceeding.  See, e.g., Santos v. Thomas, 830 F.3d 987, 993 (9th Cir. 2016) (en banc) ("an individual contesting extradition may not . . . call into question the credibility of the government's offer of proof"); Noeller v. Wojdylo, 922 F.3d 797, 807 (7th Cir. 2019) ("Evidence that contradicts the demanding country's proof or poses questions of credibility—i.e., contradictory evidence—is off-limits."); Shapiro v. Ferrandina, 478 F.2d 894, 905 (2d Cir. 1973) ("The judge's refusal to examine the credibility of the testimony and statements included in the translated material was clearly proper, since the declarants were not before him.").  Should RIVERA wish to challenge the veracity of any witness, absent an allegation that a statement was the product of torture or coercion (see Santos, 830 F.3d at 1007), he must do so in Mexico; otherwise the Court risks transforming the extradition hearing into a dress rehearsal for trial.

Finally, RIVERA's demand for discovery mandated by the California State Ethical Rules (XII), should be denied for the reasons set forth above with respect to Brady.

### E.    The Court Should Not Vacate the Extradition Hearing Date or the Briefing Schedule

Because RIVERA is not entitled to discovery, there is no need to delay the proceedings.  Further, even if the Court were to order limited discovery, RIVERA would have ample opportunity to prepare his opposition brief, which is due on December 21, 2023, and for the extradition hearing, which is scheduled for February 14, 2024.  (See Dkt. 20.)

Accordingly, the Court should deny this request.

**III. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court deny RIVERA's motion to compel discovery.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for United States of America certifies that this brief contains 5,238 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 16, 2023          */s/ John J. Lulejian*
                                  JOHN J. LULEJIAN
                                  Assistant United States Attorney

## DECLARATION OF JOHN J. LULEJIAN

I, John J. Lulejian, declare as follows:

    1.   I am an Assistant United States Attorney and am assigned to represent the United States of America in the matter of <u>United States v. Bryant Rivera</u>, Case No. 2:23-cv-08153-MCS-KS.  I make this declaration in support of the United States' Opposition to Fugitive's Motion to Compel Discovery.

    2.   Attached hereto as Exhibit 1 is a true and correct copy of Treaty on Cooperation Between the United States of America and the United Mexican States for Mutual Legal Assistance, U.S.-Mex., Dec. 9, 1987, S. Treaty Doc. No. 100-13 (1988).

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed this <u>16th</u> day of November, 2023, at Los Angeles County, California.

                         */s/John J. Lulejian*
                         JOHN J. LULEJIAN