CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
J. ALEJANDRO BARRIENTOS (Bar No. 346676)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
E-Mail: Alejandro_Barrientos@fd.org
Telephone: (213) 894-7568
Facsimile: (213) 894-7556

Attorneys for Defendant
BRYANT RIVERA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRYANT RIVERA, <br><br> Defendant. | Case No. 2:23-cv-08153-MCS-KS <br><br> **BRYANT RIVERA'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY** <br><br> **Hearing Date:** December 7, 2023 <br> **Hearing Time:** 11:00 a.m. <br> **Hearing Location:** Courtroom of the Hon. Karen L. Stevenson |

Bryant Rivera, by undersigned counsel, submits this reply in support of his motion to compel discovery, ECF No. 33.

                                                 Respectfully submitted,

                                                 CUAUHTEMOC ORTEGA
                                                 Federal Public Defender

DATED: November 26, 2023    By  */s/ J. Alejandro Barrientos*
                                                 J. ALEJANDRO BARRIENTOS
                                                 Deputy Federal Public Defender
                                                 Attorneys for Bryant Rivera

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I. THERE IS NO EXTRADITION EXCEPTION IN THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT. ............................................... 1

    A. The government fails to argue that the *Mathews* factors weigh in its favor, and instead urges the Court to disregard *Mathews* entirely—all in violation of Supreme Court and Ninth Circuit precedent. .......................... 2

    B. The government's cited cases are irrelevant, outdated, and do not otherwise support the government's position. .............................................. 3

    C. The Government does not dispute that Mr. Rivera has constitutionally protected interests at stake. ........................................................................ 6

II. THE SCOPE OF EXTRADITION PROCEEDINGS IS BROADER THAN THE GOVERNMENT ADMITS. ...................................................................... 7

III. DISCOVERY WILL ADVANCE THE COURT'S DETERMINATION OF WHETHER TO CERTIFTY EXTRADITABILITY. ........................................... 8

IV. EVEN IF THE COURT HAS DOUBTS ABOUT THE SCOPE OF DISCOVERY, IT CAN TAKE THE SAME APPROACH AS THE COURT IN *IN RE ZHENLY YE GON*. ................................................................. 9

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Federal Cases**

*Addington v. Texas*,
   441 U.S. 418 (1979) .................................................................................. 3

*Boumediene v. Bush*,
   553 U.S. 723 (2008) .................................................................................. 3

*Caplan v. Vokes*,
   649 F.2d 1336 (9th Cir. 1981) ................................................................... 6

*Charlton v. Kelly*,
   229 U.S. 447 (1913) ............................................................................... 3, 4

*Demjanjuk v. Petrovsky*,
   10 F.3d 338 (6th Cir. 1993) .................................................................... 6, 8

*Dent v. Holder*,
   627 F.3d 365 (9th Cir. 2010) .................................................................... 5

*Dhiab v. Bush*,
   2008 WL 4905489 (D.D.C. Nov. 17, 2008) ........................................... 5, 9

*Emami v. U.S. Dist. Ct. for N. Dist. of California*
   834 F.2d 1444 (9th Cir. 1987) ................................................................... 4

*In re Extradition of Molnar*,
   202 F. Supp. 2d 782 (N.D. Ill. 2002) ........................................................ 8

*Garcia v. Wells Fargo Bank, NA*,
   990 F. Supp. 2d 1028 (C.D. Cal. 2014) .................................................... 5

*Glucksman v. Henkel*,
   221 U.S. 508 (1911) .................................................................................. 4

*Hamdi v. Rumsfeld*,
   542 U.S. 507–29 (2004) ......................................................................... 2, 7

*Kashem v. Barr*,
   941 F.3d 358 (9th Cir. 2019) ................................................................. 5, 9

*Man-Seok Choe v. Torres*,
   525 F.3d 733 (9th Cir. 2008) ………………………………………………………... 5

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ……………………………………………………………….. 2

*Matter of Extradition of Ahn*,
   602 F. Supp. 3d 1304 (C.D. Cal. 2022) ................................................................ 7-8

*Matter of Extradition of Kraiselburd*
   786 F.2d 1395 (9th Cir. 1986) …………………………………………………… 5

*Merino v. U.S. Marshal*,
   326 F.2d 5 (9th Cir. 1963) ………………………………………………………... 5

*Neely v. Henkel*,
   180 U.S. 109 (1901) ……………………………………………………………….. 4

*Oen Yin-Choy v. Robinson*
   858 F.2d 1400 (9th Cir. 1988) ……………………………………………………. 4

*Parretti v. United States*,
    122 F.3d 758 (9th Cir. 1997) ...................................................................................... 8

*Prasoprat v. Benov*,
   421 F.3d 1009 (9th Cir. 2005) ………………………………………………… 5, 7

*Santos v. Thomas*,
   830 F.3d 987 (9th Cir. 2016) ...................................................................................... 8

*United States v. Edwards*,
   777 F. Supp. 2d 985 (E.D.N.C. 2011) ....................................................................... 5

*United States v. Fernandez-Morris*,
   99 F. Supp. 2d 1358 (S.D. Fla. 1999) ....................................................................... 7

*Valenzuela v. United States*,
   286 F.3d 1223 (11th Cir. 2002) ................................................................................. 8

*Toledo v. U.S. Dep't of State*,
   2023 WL 2663016 (D.D.C. Mar. 28, 2023) .............................................................. 2

*In re Zhenly Ye Gon*,

    2010 WL 169468 (D.D.C. Jan. 8, 2010) ............................................................. 9-10

# REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY

## INTRODUCTION

Though separated into more numerous subparts, the government essentially makes three arguments in opposition to Mr. Bryant Rivera's motion to compel discovery: (i) Mr. Rivera is not entitled to discovery because this is an extradition matter, (ii) even if he were, the scope of extradition proceedings is narrow, and (iii) his discovery request is not appropriately tailored. In making these arguments, the government asks the Court to entirely disregard modern due process jurisprudence. It glosses over the numerous legal and corresponding factual issues that arise in extradition proceedings. And it fails to meaningfully dispute that it has relevant evidence in its possession. The Court should therefore grant Mr. Rivera's motion to compel discovery. Alternatively, Mr. Rivera proposes a narrower discovery order that has been used in other extradition matters.

## ARGUMENT

### I. THERE IS NO EXTRADITION EXCEPTION IN THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT.

The government first attempts to carve out an extradition exception to the due process clause of the Fifth Amendment, urging the Court to entirely disregard *Mathews v. Eldridge* and modern due process jurisprudence. In doing so, the government cites cases that fail to advance its position because they: (i) did not address constitutional arguments at all, (ii) pre-date *Mathews* and are otherwise irreconcilable with *Mathews*, or (iii) did not address discovery or addressed discovery requests not made here (*e.g.*, requests to take depositions in a foreign nation). The government also fails to dispute that Mr. Rivera has constitutionally protected interests at stake and that those interests have proven sufficient to compel discovery in other contexts. Instead of disregarding due process jurisprudence and relying on the government's unilluminating and irrelevant cases, the Court should rigorously apply *Mathews*. Doing so compels the conclusion that there is no extradition exception to due process and that discovery is warranted.

1

**A.     The government fails to argue that the *Mathews* factors weigh in its favor, and instead urges the Court to disregard *Mathews* entirely—all in violation of Supreme Court and Ninth Circuit precedent.**

The government fails to offer any argument that the *Mathews* factors weigh in its favor. It instead makes a cursory argument in a footnote that the Court should not apply *Mathews* at all, citing two out-of-circuit district court decisions. Even accepting the government's characterizations of those cases—which the Court should not do[1]—they do not permit this Court to ignore *Mathews*.

*Mathews* provides the "***ordinary mechanism*** . . . for determining the procedures that are necessary to ensure that a citizen is not deprived of life, liberty, or property, without due process of law" *Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004) (cleaned up & emphasis added). And though the government protests that this is not a criminal matter, "[t]he right to be heard before being condemned to suffer grievous loss of any kind, *even though it may not involve the stigma and hardships of a criminal conviction*, is a principle basic to our society." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Indeed, in *Hamdi v. Rumsfeld*, the Supreme Court expressly rejected arguments similar to those made by the government here, including the government's argument that a relator's due process rights are "highly circumscribed" given the nature of extradition proceedings. Gov. Opp., 16; *see Hamdi*, 542 U.S. at 535 ("[W]e necessarily reject the Government's assertion that separation of powers principles mandate a heavily circumscribed role for the courts.").

The government also suggests that the requirements of due process are met simply because of "[t]he fact that the Court will hold an extradition hearing." Gov. Opp., 17.

---

[1] One of the cases, *Toledo v. U.S. Dep't of State*, undermines the government's argument that this Court should decline to apply *Mathews* because it in-fact applied *Mathews*. 2023 WL 2663016, at *8 (D.D.C. Mar. 28, 2023) (finding that the relator's "private liberty interest is indisputably implicated by his extradition proceedings" and then addressing the remaining two *Mathews* factors).

But due process is not satisfied merely because there is some nominal process or judicial review. In *Addington v. Texas*, for example, the Supreme Court held that civil proceedings for the involuntary commitment of a person alleged to be both mentally ill and dangerous failed to satisfy due process if they used the preponderance-of-the-evidence standard because that standard is too low given the important liberty interests at stake. 441 U.S. 418 (1979). Notably, It was not enough that some judicial process had occurred (indeed, the petitioner had received a full jury trial). Similarly, in the enemy-combatant cases, the Supreme Court did not merely mandate some judicial review, but instead mandated specific procedural protections, including "the authority to admit and consider relevant exculpatory evidence." *Boumediene v. Bush*, 553 U.S. 723, 786 (2008).

### B. The government's cited cases are irrelevant, outdated, and do not otherwise support the government's position.

Instead of grappling with *Mathews* in a meaningful manner, the government relies on cases that fail to advances its position and on platitudes that are so vague as to be unhelpful—most frequently, irrelevant assertions that extradition proceedings are not criminal proceedings,[2] and vague assertions that extradition proceedings are not dress rehearsals for trial. Gov. Opp., 11-23. Such citations and incantations are no substitute for a rigorous application of *Mathews*, which compels discovery in this case.[3]

***The Supreme Court's Pre-Mathews Decisions***. The government cites three century-old, pre-*Mathews* extradition decisions by the Supreme Court that do not advance its position in any meaningful way. First, *Charlton v. Kelly* addressed the question of whether, under a federal extradition statute and not the Constitution, a relator may submit evidence of insanity at an extradition hearing. 229 U.S. 447 (1913). Addressing only a statutory argument, the Supreme Court found such evidence

---

[2] Mr. Rivera has never claimed that this matter is a criminal proceeding.

[3] The government also argues that nothing in the relevant treaty entitles Mr. Rivera to discovery. Like many of the government's arguments, this is a strawman. As made clear throughout Mr. Rivera's motion to compel, Mr. Rivera is relying on the due process clause of the Fifth Amendment and not any treaty.

3

inadmissible. *Id.*, at 457–58.[4] Second, without specifying whether the case had any constitutional implications, *Glucksman v. Henkel* also addressed two questions not before this Court: (i) can a relator stop his extradition by showing he will not receive a fair trial in the requesting nation, and (ii) was the evidence sufficient to justify the relator's extradition. 221 U.S. 508 (1911). Finally, *Neely v. Henkel* also addressed an argument not before this Court: That a federal extradition statute was unconstitutional because it failed to guarantee a relator would have the same procedural rights in a foreign criminal trial as he would in an American criminal trial. 180 U.S. 109, 122 (1901).[5] None of these cases addressed discovery at all. And they all pre-date *Mathews* by more than a century.

***Unilluminating Ninth Circuit Decisions***. Failing to identify any on-point Supreme Court decisions, the government cites a number of Ninth Circuit decisions that did not address constitutional arguments and otherwise provide so little analysis that they fail to shed meaningful light on Mr. Rivera's motion. *Oen Yin-Choy v. Robinson* held, with no case-specific explanation or constitutional analysis, that the extradition court did not abuse its discretion in denying the relator's discovery motion because the relator made "no showing that the requested discovery would appreciably advance his negation or explanation of the government's showing of probable cause." 858 F.2d 1400, 1407 (9th Cir. 1988). Similarly, *Emami v. U.S. Dist. Ct. for N. Dist. of California* held that an extradition court did not abuse its discretion in denying a discovery motion without giving any precise explanation of what discovery the relator had requested or addressing any constitutional arguments. 834 F.2d 1444 (9th Cir. 1987). Without addressing constitutional arguments, *Man-Seok Choe v. Torres* held in a single sentence that an extradition court did not err in denying discovery about an alleged accomplice's

---

[4] ("But it is said that the act of 1882 (22 Stat. at L. *458 215, § 3, chap. 378, U.S. Comp. Stat. 1901, p. 3594), requires that the defendant's witnesses shall be heard.").

[5] ("It is contended that the act of June 6th, 1900, is unconstitutional and void in that it does not secure to the accused, when surrendered to a foreign country for trial in its tribunals, all of the rights, privileges, and immunities that are guaranteed by the Constitution to persons charged with the commission in this country of crime against the United States.").

credibility. 525 F.3d 733, 740 (9th Cir. 2008). *Prasoprat v. Benov* affirmed denial of a discovery motion seeking information about the use of the death penalty in the requesting country, which is not at issue here. 421 F.3d 1009, 1015 (9th Cir. 2005). And *Matter of Extradition of Kraiselburd* affirmed the denial of a discovery motion seeking the requesting country's "entire file" on the underlying allegations, without addressing any constitutional arguments. 786 F.2d 1395, 1399 (9th Cir. 1986) These cases do not support the government's position because they did not address constitutional arguments, or they addressed requests for discovery categorically different from those made by Mr. Rivera, *e.g.*, requests directed to the requesting country rather than the U.S. government.

**Extradition & Brady.** The best authority that the government has to offer is *Merino v. U.S. Marshal*, which addressed the narrow question of whether due process required that a relator be permitted to take depositions in Mexico, which is not a request that Mr. Rivera is making in this matter. 326 F.2d 5, 13 (9th Cir. 1963). The Court should reject the government's reliance on *Merino* for four reasons. First, the question presented in *Merino* is simply different than the one presented here: Mr. Rivera is not asking to take depositions in Mexico. Second, *Merino* pre-dates *Mathews* by more than a decade and is irreconcilable with *Mathews* for the reasons explained in Mr. Rivera's opening brief, *i.e.*, the *Mathews* factors compel discovery in this case.[6] Third, whether or not *Brady* applies, due process mandates discovery in non-criminal contexts.[7] Finally, the Ninth Circuit's decision in *Prasoprat v. Benov*—which the government cites—endorsed the proposition that *Brady* material is relevant in extradition proceedings. 421 F.3d 1009. Specifically, *Prasoprat* addressed whether the Sixth Circuit's decision in *Demjanjuk v.*

---

[6] *See Garcia v. Wells Fargo Bank, NA*, 990 F. Supp. 2d 1028, 1033 (C.D. Cal. 2014) ("District courts are bound by prior Ninth Circuit precedent except where clearly irreconcilable Supreme Court authority intervenes, in which case district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of the Ninth Circuit as having been effectively overruled.") (cleaned up).

[7] *See, e.g., Kashem v. Barr*, 941 F.3d 358, 384 (9th Cir. 2019); *Dent v. Holder*, 627 F.3d 365, 373 (9th Cir. 2010); *Dhiab v. Bush*, 2008 WL 4905489, at *1 (D.D.C. Nov. 17, 2008), *citing Boumediene v. Bush*, 553 U.S. 723, 785 (2008); *United States v. Edwards*, 777 F. Supp. 2d 985 (E.D.N.C. 2011).

5

*Petrovsky*,[8] which found *Brady* applicable in extradition matters, supported a relator's request for discovery. In considering *Demjanjuk*, the Ninth Circuit found that "the evidence sought by Demjanjuk . . . related to whether he was in fact the individual who had committed the extraditable offense **and thus concerned the probable cause determination**." *Id.*, 1015 (emphasis added).[9]

### C. The Government does not dispute that Mr. Rivera has constitutionally protected interests at stake.

The government briefly suggests that Mr. Rivera's interests in being free from government restraint and in remaining in his home country are insufficient to compel discovery, claiming that "an extradition proceeding culminates in a 'surrender' to the foreign government, rather than in criminal punishment of any sort." Gov. Opp., 16. In doing so, the government does not dispute three key points: (i) Mr. Rivera's current and likely future detention by the U.S. government deprives him of a constitutionally protected liberty interest, (ii) Mr. Rivera has a constitutionally protected interest in remaining in the United States, and (iii) these interests have proven sufficient to compel discovery in non-criminal contexts. In sum, the government effectively concedes that

---

[8] 10 F.3d 338 (6th Cir.1993)

[9] In an attempt to bolster its misplaced reliance on *Merino*, the government incorrectly claims that the Ninth Circuit "reinforced" *Merino* in *Caplan v. Vokes*, 649 F.2d 1336 (9th Cir. 1981). Gov. Opp., 13. In doing so, the government cites a single footnote from *Caplan* that does not mention *Brady* or *Merino* at all, much less resolve any question about the applicability of *Brady* in extradition proceedings. *Id.*, citing *Caplan*, 649 F.2d at 1342 n.10. Rather, the footnote provides a general overview of extradition proceedings while citing *Charlton v. Kelly*, which, as already explained, solely addressed a statutory argument about the availability of an insanity defense to extradition. Also, the government attempts to distinguish *Demjanjuk*, claiming that it did not conduct an independent investigation in this case and only supplied "limited information to its Mexican counterpart." Gov. Opp. 14-15. The truth is, however, that the U.S. government made the affirmative decision to search Mr. Rivera's residence, as the Mutual Legal Assistance Treaty gives the government discretion to decline any request by Mexico to search Mr. Rivera's property. Gov. Opp., Ex. 1, art. 3(b). And the government does not claim that Mexico requested a search of Mr. Rivera's vehicle, but the extradition request clearly states that the FBI conducted such a search, indicating an independent U.S. investigation. Moreover, the U.S. provided SIM cards from cellphones found at Mr. Rivera's residence, among other things. Such electronic storage devices often contain mountains of data that can be used to further prosecutions.

Mr. Rivera has constitutionally protected interests at stake and that those interests are strong enough to compel discovery. For this reason alone, the Court should reject the government's much-repeated argument that extradition matters are different from criminal matters. Such argument has no relation to the interests that Mr. Rivera actually identified in his motion to compel.

*     *     *

While the government cites numerous cases in its attempt to avoid discovery, a close examination of those cases reveals minimal support for the government's position.[10] The Court should not rest its decision on such weak caselaw. It should instead rigorously apply *Mathews*, which is the "ordinary mechanism" for determining procedural due process claims, has been applied in a wide variety of contexts, and compels discovery in this matter. *Hamdi*, 542 U.S. at 528.

## II. THE SCOPE OF EXTRADITION PROCEEDINGS IS BROADER THAN THE GOVERNMENT ADMITS.

The government also attempts to narrow the scope of extradition proceedings, but extradition proceedings are broader than the government lets on. First, as discussed above, the Ninth Circuit has stated that exculpatory evidence is relevant in extradition proceedings. *See Prasoprat*, 421 F.3d 1015 ("the evidence sought by Demjanjuk . . . related to whether he was in fact the individual who had committed the extraditable offense and thus concerned the probable cause determination."). Second, extradition courts routinely consider matters beyond the materials submitted by the requesting nation. *See, e.g.*, *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1369 (S.D. Fla. 1999) (considering expert testimony offered by relator regarding law of the requesting nation); *Matter of Extradition of Ahn*, 602 F. Supp. 3d 1304, 1312 (C.D. Cal. 2022) (considering expert testimony offered by relator regarding reliability of statements

---

[10] The government cites a number of cases that do not establish binding precedent in the Ninth Circuit. The Court should decline to follow those cases because their reasoning has the same deficits as the government's arguments here.

made by officials of foreign nation); *In re Extradition of Molnar*, 202 F. Supp. 2d 782, 787 (N.D. Ill. 2002) (considering documentation of foreign proceedings provided by the relator). Finally, numerous courts of appeals have permitted relators to litigate constitutional challenges to the government's evidence. The Ninth Circuit, for example, has agreed that the government's use of witness statements procured by torture would violate due process and are therefore not competent evidence in extradition proceedings. *Santos v. Thomas*, 830 F.3d 987, 1003 (9th Cir. 2016). It has also considered Fourth Amendment challenges to provisional arrest warrants in extradition proceedings. *Parretti v. United States*, 122 F.3d 758, 764-76 (9th Cir. 1997), *opinion withdrawn on reh'g on other grounds*, 143 F.3d 508 (9th Cir. 1998). As discussed in Mr. Rivera's opening brief, the Sixth Circuit has accepted arguments that the government attorneys violated *Brady* during extradition proceedings. *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993). And various courts of appeals have accepted arguments that due process prevents the government from using evidence that it promised not to share pursuant to a cooperation agreement. *See, e.g.*, *Valenzuela v. United States*, 286 F.3d 1223, 1229 (11th Cir. 2002).

## III. DISCOVERY WILL ADVANCE THE COURT'S DETERMINATION OF WHETHER TO CERTIFTY EXTRADITABILITY.

In an express attempt to "narrow the issues as much as possible," ECF No. 33-5, counsel for Mr. Rivera attempted to confer with counsel for the government regarding the scope of Mr. Rivera's discovery request. Counsel for the government cut those efforts short, stating in full, "I think it's best to just move forward with your motion." *Id*. Interestingly, the government does ***not*** now categorically deny that it possesses exculpatory evidence or, in its preferred parlance, explanatory evidence.[11]

It instead argues that some of Mr. Rivera's discovery requests are overbroad or irrelevant, specifically citing several categories of discovery requested by Mr. Rivera. The government essentially repeats three arguments as to each of these: (i) Mexico is not

---

[11] The government only identifies one category of discovery to which it has no responsive material, namely statements made by Mr. Rivera. Gov. Opp., 26.

8

obligated to present all of its evidence, (ii) the Court's decision will be based on the materials submitted by Mexico, and (iii) "extradition proceedings should not be a dress rehearsal for trial." The government's first argument is a strawman: Mexico is not a party in these proceedings, Mr. Rivera has not requested discovery from Mexico, and Mr. Rivera has not requested that the U.S. government obtain anything from Mexico. Granting Mr. Rivera's motion would therefore require nothing from Mexico. The government's second argument is wrong. As already discussed, extradition courts routinely consider evidence beyond the materials submitted by the requesting country. The third assertion is unhelpful because, as already discussed, the government's cited cases fail to address the constitutional arguments made here, or discovery requests similar to those made here. In any case, due process may require discovery even if it does not require a trial. *See, e.g.*, *Kashem*, 941 F.3d at 384; *Dhiab*, 2008 WL 4905489.

Finally, Mr. Rivera's requests are reasonably calculated to lead to relevant evidence. For example, Mr. Rivera also requested discovery pertaining to examinations or tests, which covers DNA and fingerprint tests. *Id.*, Request VII. Exculpatory DNA or fingerprint evidence could "completely obliterate the evidence of probable cause." Gov. Opp., 21 (cleaned up). He similarly requested government records related to his movements across the U.S.-Mexico border. Mot. Compel., Ex. A, Request XII. This request is reasonably calculated to capture evidence that could explain the timeline of any trips to Mexico, which could in turn explain away the government's evidence. On a more fundamental level, it bears repeating that the government has not made any representation that it does not possess any exculpatory or explanatory evidence. If it does, this Court should be informed of its existence.

## IV. EVEN IF THE COURT HAS DOUBTS ABOUT THE SCOPE OF DISCOVERY, IT CAN TAKE THE SAME APPROACH AS THE COURT IN *IN RE ZHENLY YE GON*.

Even if the Court has doubts about the scope of discovery, it can take the same approach as the court in *In re Zhenly Ye Gon*, No. 08-596(JMF), 2010 WL 169468

(D.D.C. Jan. 8, 2010). There, the court recognized that "a man who is imprisoned to await extradition has been deprived of his liberty, and that deprivation is without due process of law when the government conceals information that would negate the probable cause offered by the demanding state." *Id*., at *3. It therefore "insist[ed] that the United States provide . . . any evidence within its possession that would negate the showing of probable cause that the Mexican government has offered." The court added that it "expect[ed] . . . the government to resolve doubts in favor of the respondent and to submit . . . in camera any evidence that it believes might meet this criterion." *Id*., *4. While the defense maintains that its discovery request is sufficiently tailored, this Court can take the same approach as the court in *Zhenly Ye Gon* if it feels otherwise.

## CONCLUSION

For the stated reasons, the Court should grant Mr. Rivera's motion to compel discovery.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 26, 2023    By  /s/ *J. Alejandro Barrientos*
J. ALEJANDRO BARRIENTOS
Deputy Federal Public Defender
Attorneys for Bryant Rivera

10