E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0721
    Facsimile: (213) 894-0141
    E-mail:   john.lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>        v.<br><br>BRYANT RIVERA,<br>  aka "Eduardo,"<br><br>     A Fugitive from the<br>     Government of the<br>     United Mexican States. | No. 2:23-cv-08153-MCS-KS<br><br>UNITED STATES' CONSOLIDATED OPPOSITION TO RELATOR'S (1) MOTION TO SUPPRESS EVIDENCE AND (2) MOTION TO RECONSIDER THE COURT'S ORDER DENYING THE MOTION TO COMPEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CINTHIA GUTIERREZ; EXHIBIT; DECLARATION OF JOHN J. LULEJIAN<br><br>Hearing Date: October 1, 2024<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the<br>              Hon. Karen L.<br>              Stevenson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney John J. Lulejian, hereby files its Consolidated Opposition to the Motion to Suppress Evidence Docket No. 52) and the Motion to Reconsider the Court's Order Denying the Motion to Compel (Dkt. 53) filed by Relator BRYANT RIVERA, also known as "Eduardo" ("RIVERA").

This consolidated opposition is based upon the attached memorandum of points and authorities, the files and records in this case, the attached declaration, and such further evidence and argument as the Court may permit.

Dated: September 10, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ John J. Lulejian*
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Government of the United Mexican States ("Mexico") is prosecuting fugitive BRYANT RIVERA, also known as "Eduardo" ("RIVERA" or "fugitive"), under its domestic law prohibiting femicide, also referred to as feminicide, committed on its soil.  Mexico has submitted a formal request to the United States, pursuant to the U.S.-Mexico extradition treaty, to extradite RIVERA to stand trial for two counts of femicide.[1]  The extradition hearing is scheduled for October 1, 2024.

On July 16, 2024, RIVERA, in addition to filing a brief opposing extradition, filed a motion to suppress evidence seized by the Federal Bureau of Investigation ("FBI") on July 6, 2023, claiming that the FBI did not obtain consent from his father to search his vehicle.  (See Dkt. 52 at 4-5.)  This motion must fail, because prior to searching RIVERA's vehicle, the FBI obtained oral and written consent from Candido Rivero, RIVERA's father, to conduct the search. Further, the totality of the circumstances establish that RIVERA's father gave his consent voluntarily.

RIVERA also filed a motion for reconsideration of the Court's decision denying him discovery, claiming that he newly discovered evidence that demonstrates that the United States is conducting an independent criminal investigation into his activities.  That motion also must fail because the evidence offered by RIVERA does not

---

[1] Extradition Treaty Between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, as amended by the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, U.S.-Mex., Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998) (collectively the "Treaty").

establish that the United States did anything other than assist Mexico.

## II.  The Motion to Suppress Should Be Denied Because the Search of the Chevrolet Silverado Was Valid

### 1.  Background

On July 6, 2024, pursuant to a Mutual Legal Assistance Request from Mexico, (Dkt. 24-2 at 17), the FBI executed a court-authorized search warrant for the residence that RIVERA shared with his parents. (Decl. of Cinthia Gutierrez ("Gutierrez Decl."), dated 09/10/2024, at ¶ 2.)  During the search, the FBI agents discovered a garage/carport attached to the residence and a 2021 Chevrolet Silverado, bearing California license plate number ***22E3 ("Chevrolet Silverado") leased by RIVERA and his father in the driveway.  (Id.)  Because the search warrant was limited to the residence, the FBI agents determined that they needed to obtain either consent from RIVERA's father or a roll-back warrant to search the garage/carport and the Chevrolet Silverado.  (Id.)  After consulting with the United States Attorney's Office, the FBI sought consent from RIVERA's father to search the garage/carport and the Chevrolet Silverado.  (Id.)

Prior to obtaining consent, FBI Special Agent Gutierrez downloaded a Spanish-language version of the FBI's standard consent form on her mobile telephone and transcribed it onto a lined piece of paper, noting that the consent was for the garage/carport and the Chevrolet Silverado.  (Id. at ¶ 3.)  She then read the contents of the Spanish-language form out loud and to RIVERA's father.  (Id.)  She paused at the end of each paragraph and orally confirmed that RIVERA's father understood what she had read.  (Id.)  After reading the entire contents of the form aloud, Special Agent Gutierrez asked

2

1    RIVERA's father if he heard and understood what she had read to him

2    and whether he consented to the search of the garage/carport and

3    Chevrolet Silverado.  (Id.)  When RIVERA's father confirmed that he

4    understood and consented to the search, Special Agent Gutierrez asked

5    him to sign the consent form she had prepared.  (Id.)  Because

6    RIVERA's father was vision-impaired, Special Agent Gutierrez told him

7    where to affix his signature.  (Id.)  After RIVERA's father signed

8    the form, Special Agent Gutierrez also signed the form.  (Id.)

9              2.   Legal Standard for Warrantless Consent Search

10        "[A warrantless] search conducted pursuant to a valid consent is

11   constitutionally permissible."  Schneckloth v. Bustamonte, 412 U.S.

12   218, 222 (1973).  Whether consent to search was voluntarily given is

13   a question of fact and "to be determined from the totality of all the

14   circumstances."  United States v. Brown, 563 F.3d 410, 415 (9th Cir.

15   2009) (quoting Schneckloth, 412 U.S. at 222).  The Ninth Circuit

16   considers five factors in determining whether a consent to search is

17   voluntary, namely:

18        (1) whether the [consenting individual] was in custody; (2)

19        whether the arresting officers had their guns drawn; (3)

20        whether Miranda warnings were given; (4) whether the

21        [consenting individual] was notified that she had a right

22        not to consent; and (5) whether the [consenting individual]

23        had been told a search warrant could be obtained.

24   Brown, 563 F.3d at 415 (citing United States v. Jones, 286 F.3d 1146,

25   1152 (9th Cir. 2002)).  "No one factor is determinative in the

26   equation."  United States v. Patayan Soriano, 361 F.3d 494, 502 (9th

27   Cir. 2004).  Further, all five factors need not be satisfied to

28   sustain a consensual search.  See United States v. Basher, 629 F.3d

                                        3

1   1161, 1168 (9th Cir. 2011); Patayan Soriano, 361 F.3d at 502 ("It is

2   not necessary to check off all five factors, but many of this court's

3   decisions upholding consent as voluntary are supported by at least

4   several of the factors.  Nevertheless, these factors are only

5   guideposts, not a mechanized formula to resolve the voluntariness

6   inquiry.") (internal quotations and citations omitted).  Also,

7   "[b]ecause each factual situation surrounding consent to a search is

8   unique, a court may also consider other relevant factors."  Liberal

9   v. Estrada, 632 F.3d 1064, 1082 (9th Cir. 2011), abrogated on other

10  grounds by Hampton v. California, 83 F.4th 754 (9th Cir. 2023).

11              3.   RIVERA's Father Voluntarily Consented to the Search of
12                   the Chevrolet Silverado and Garage/Carport

13       Even though RIVERA acknowledges that the United States

14  previously represented to the Court that the FBI obtained consent

15  from RIVERA's father to search the Chevrolet Silverado, (Dkt. 52 at

16  4; see Dkt. 44 at 33:21-34:1), RIVERA asserts that the FBI did not

17  obtain his father's consent.  (Dkt. 52 at 4.)  To support this

18  assertion, RIVERA provides a declaration from his father in which he

19  states "that he did not consent to a search of the truck and did not

20  sign any waiver form."  (Id.)  The evidence, however, refutes this

21  baseless assertion.

22       The United States has attached to Special Agent Gutierrez's

23  declaration a copy of the consent form that RIVERA's father signed on

24  July 6, 2023.  (Gutierrez Decl. at ¶ 3, Exh. A.)  By signing the

25  consent form, RIVERA's father allowed the FBI to search both the

26  garage/carport and the Chevrolet Silverado.  The existence of the

27  signed consent should end the matter.  However, even if RIVERA were

28

4

to claim, which he does not, that his father's consent was not voluntary, the facts of the case belie such a claim.

When RIVERA's father signed the consent form, he and his wife were inside of their residence and were not in custody. (Gutierrez Decl. at ¶ 4.) As a result, the FBI did not need to provide him any Miranda warnings. At no time during her interactions with RIVERA's father did Special Agent Gutierrez or Deputy United States Marshal America Bailon, who also was present, draw their firearms. (Id.) Recognizing that RIVERA's father was vision-impaired and did not speak English, Special Agent Gutierrez read the consent form to RIVERA's father in Spanish, confirming that he heard and understood what she read. (Id. at ¶ 3.) The form that she read to RIVERA's father explicitly stated that he had the right to refuse to give consent. (Id. at ¶ 3, Exh. A.) After reading the form to RIVERA's father, she asked him whether he consented to the search, and when he orally gave consent, she told him where he was to sign. (Id. at ¶ 3.) Because RIVERA's father consented, there was no need to explain to him that the FBI could get a roll-back warrant for the garage/carport and the Chevrolet Silverado.

Therefore, under the totality of the circumstances, RIVERA's father's consent to search the garage/carport and the Chevrolet Silverado was voluntary. Accordingly, the search of the garage/carport and the Chevrolet Silverado was valid, and any evidence seized is admissible.

   **B.   RIVERA's Motion for Reconsideration Should Be Denied**

      1.   Background

On January 31, 2024, this Court denied RIVERA's motion to compel discovery. (Dkt. 46.) Notwithstanding the Court's clear decision,

5

RIVERA continues to seek discovery to which he is not entitled.  He does so by alleging that the United States has its own investigation separate and apart from Mexico.  (Dkt. 53 at 4.)  RIVERA has reached this conclusion, even though the United States repeatedly has stated on the record that the United States does not have its own investigation, and simply is assisting Mexico.  (Dkt. 36 at 23; 44 at 23-24.)

RIVERA's conclusion is based on two events.  First, the FBI contacted RIVERA's brother-in-law and asked him about one of the victim's telephones.  (Dkt. 53 at 4.)  Second, the Mexican officials allegedly stated that they sent a USB Flash drive containing digital media to the United States.  (Id.)  Based on these events, RIVERA concludes that the United States must have its own independent investigation.  (Id.)  However, for the reasons set forth below, RIVERA's conclusion is wrong.

    2.    RIVERA Fails to Satisfy the Standard for Reconsideration

According to Local Rule 7-18, a party only may apply for reconsideration of an Order in three situations.[2]  First, there is "a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered."  Second, there is an "emergence of new material facts or a change of law occurring after the Order was entered."  Or third,

---

[2] As the Ninth Circuit explained in In re Extradition of Kirby, 106 F.3d 855, 867 (9th Cir. 1996), "[e]xtradition proceedings are not criminal proceedings . . . ; no guilt or innocence is determined in them.  Nor are extradition proceedings civil as the term is used in our rules, so that they are not governed by the Federal Rules of Civil Procedure[]."

1  there is "a manifest showing of a failure to consider material facts

2  presented to the Court before the Order was entered."  RIVERA fails

3  to establish that any of these circumstances is present here.

4              3.    There is No Independent U.S. Criminal Investigation

5                    into RIVERA's Alleged Criminal Conduct

6        In this case, RIVERA appears to assert that it has come to his

7  attention that there an independent U.S. criminal investigation into

8  his alleged criminal conduct, and that therefore he is entitled to

9  discovery.  RIVERA's assertion, however, is mere speculation.  It

10 also is incorrect.  To support his claim, RIVERA notes only that (1)

11 an FBI agent contacted his brother-in-law, Eduardo Perez ("Perez"),

12 seeking information about a telephone that RIVERA had brought to

13 Perez's house; and (2) Mexican authorities sent a USB Flash drive

14 containing digital media to the United States.  (Dkt. 53 at 4.)  None

15 of this information, however, establishes that a U.S. criminal

16 investigation exists.

17      On the contrary – the United States repeatedly has stated that

18 it is assisting Mexico and not conducting its own investigation into

19 RIVERA's alleged criminal conduct.  In its opposition to RIVERA's

20 motion to compel discovery, the United States affirmatively stated

21 that "Mexican authorities were the only entity that investigated and

22 are prosecuting RIVERA for the two femicides."  (Dkt. 36 at 23.)  At

23 the December 7, 2023, hearing, the United States again affirmatively

24 stated that it only was assisting Mexico and not conducting its own

25 investigation:

26      [W]hat you have is an investigation taking place only in

27      Mexico.  What the United States did was comply with the

28      extradition and to address the mutual legal assistance

                                     7

1  <u>requests</u>.  As the prosecutor on the case, I will tell you

2  we were very careful to make sure that this did not turn

3  into a criminal case on the United States's side.  We don't

4  intend to prosecute Mr. Rivera based on what we have at

5  this point.  So we don't have an open criminal

6  investigation.

7  (Dkt. 44 at 23-24 (emphasis added).)  That fact has not changed.

8      The United States does not dispute that the FBI contacted Perez.

9  However, the agents contacted Perez not for a U.S. criminal

10  investigation, but at the request of Mexico for its investigation.

11      After the FBI was not able to contact Perez by telephone, it

12  enlisted the help of his landlord.  (Gutierrez Decl. at ¶ 5.)  Thus,

13  on August 3, 2023, Special Agent Gutierrez and FBI Special Agent

14  Thuan Ngo attempted a conference call with Perez through his

15  landlord.  (<u>Id.</u>)  Unfortunately, it was difficult to communicate and

16  hear all of the parties on the call.  (<u>Id.</u>)  Therefore, Perez

17  provided the agents with his cellular telephone number so that they

18  could call him directly.  (<u>Id.</u>)

19      When the agents finally spoke with Perez, he stated that he and

20  his wife (RIVERA's sister) were not aware of the murders in Tijuana,

21  Mexico, until recently. (<u>Id.</u> at ¶ 6.)  According to Perez, in January

22  2022, RIVERA went to Perez's residence and left an Apple iPhone with

23  one of Perez's sons.  (<u>Id.</u>)  Perez stated that he did not know why

24  RIVERA left the telephone there and was aware that a telephone of

25  that type usually was locked and could be tracked.  (<u>Id.</u>)  Thinking

26  that the telephone may have been stolen, Perez was prepared to give

27  it to anyone who came looking for it.  (<u>Id.</u>)  However, several days

28  later, RIVERA returned to Perez's residence and picked up the

telephone.  (Id.)  Perez denied knowing what RIVERA did with the telephone after that or that it could have belonged to a murder victim.  (Id.)

Likewise, the fact that Mexico provided the United States materials on a USB flash drive does not transform the Mexican investigation into a U.S. criminal investigation.  The FBI has conducted a database search and confirmed that it does not have a domestic investigation related to RIVERA's alleged conduct.  (Id. at ¶ 7.)  Further, neither the United States Attorney's Office nor the U.S. Department of Justice, Office of International Affairs, is aware of any ongoing U.S. criminal investigation related to RIVERA's alleged criminal conduct.  (Decl. of John J. Lulejian, dated 09/10/2024, at ¶ 3.)

Accordingly, RIVERA cannot satisfy the standard required for this Court to reconsider its Order.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny Relator's Motion to Suppress Evidence Docket No.

\\
\\
\\
\\
\\
\\
\\
\\
\\

52) and the Motion to Reconsider the Court's Order Denying the Motion to Compel (Dkt. 53).

 Dated: September 10, 2024          Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    */s/ John J. Lulejian*
                                    JOHN J. LULEJIAN
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the United States of America, certifies that this brief contains <u>2,402</u> words, which complies with the word limit of L.R. 11-6.1.


Dated: September 10, 2024          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  */s/ John J. Lulejian*
                                  JOHN J. LULEJIAN
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

## **DECLARATION OF CINTHIA GUTIERREZ**

I, Cinthia Gutierrez, declare as follows:

1.    I am a Special Agent of the Federal Bureau of Investigation
("FBI") and have been since 2019.  I make this declaration in support
of the United States' Consolidated Opposition to Relator's (1) Motion
to Suppress Evidence and (2) Motion to Reconsider the Court's Order
Denying the Motion to Compel.

2.    On or about July 6, 2024, pursuant to a Mutual Legal
Assistance Request from Mexico, the FBI executed a court-authorized
search warrant for the residence that Relator BRYANT RIVERA
("RIVERA") shared with his parents.  During the search, the FBI
discovered a garage/carport attached to the residence and a 2021
Chevrolet Silverado, bearing California license plate number ***22E3
("Chevrolet Silverado") leased by RIVERA and his father in the
driveway.  Because the search warrant was limited to the residence, I
understood that we needed to obtain either consent from RIVERA's
father or a roll-back warrant to search the garage/carport and the
Chevrolet Silverado.  I am informed and believe that after FBI
Special Agent Thuan Ngo consulted with the United States Attorney's
Office, we decided to seek consent from Candido Rivera, RIVERA's
father, to search the garage/carport and the Chevrolet Silverado.

3.    Because we did not have a Spanish-language version of the
FBI's standard consent form with us, I downloaded the Spanish-
language version of the form onto my mobile telephone and transcribed
it onto a lined piece of paper.  I made sure to note that the consent
was for the garage/carport and the Chevrolet Silverado.  I then read
the contents of the Spanish-language form out loud and to RIVERA's
father.  At the end of each paragraph, I paused and orally confirmed

that RIVERA's father understood what I had read.  After reading the entire contents of the form aloud, I asked RIVERA's father if he heard and understood what I had read to him and whether he consented to the search of the garage/carport and Chevrolet Silverado. RIVERA's father confirmed that he understood and consented to the search.  I asked him to sign the consent form I had prepared. Because RIVERA's father was vision-impaired, I told him where he was to affix his signature.  After RIVERA's father signed the form, I signed the form.  A true and correct copy of the executed consent form and a certified translation of that consent form prepared at the request of the United States Attorney's Office are attached hereto as Exhibit A.

4.    During our interactions with RIVERA's father, neither he nor his wife were in custody.  Although they were initially sitting outside during the search of their residence, at the conclusion of that search and at our invitation, they opted to return to their residence.  It was inside their residence where I obtained consent to search from RIVERA's father.  I recall that Deputy United States Marshal ("DUSM") America Bailon also was also present inside of the residence when I obtained consent from RIVERA's father.  At no time during my interactions with RIVERA's father did DUSM Bailon or I draw our firearms.

5.    I am informed and believe that Special Agent Ngo was not able to contact RIVERA's brother-in-law, Eduardo Perez ("Perez") by telephone.  RIVERA's landlord offered to help us contact Perez, and on or about August 3, 2023, Special Agent Ngo and I attempted a conference call with Perez, through RIVERA's landlord. Unfortunately, it was difficult to communicate and hear all of the

parties on the conference call.  Therefore, Perez provided us with his cellular telephone number so that we could call him directly.

6.   When we finally spoke with Perez, he stated that he and his wife (RIVERA's sister) were not aware of the murders in Tijuana, Mexico, until recently.  According to Perez, in January 2022, RIVERA went to Perez's residence and left an Apple iPhone with one of Perez's sons.  Perez stated that he did not know why RIVERA left the telephone there and was aware that a telephone of that type usually was locked and could be tracked.  Thinking that the telephone may have been stolen, Perez was prepared to give it to anyone who came looking for it.  However, several days later, RIVERA returned to Perez's residence and picked up the telephone.  Perez denied knowing what RIVERA did with the telephone after that or that it could have belonged to a murder victim.

7.   On or about September 9, 2024, at the request of the United States Attorney's Office, I conducted a database search, which indicated that the FBI has assisted with executing Mexican authorities' requests for assistance with Mexico's investigation into RIVERA's alleged violations of Mexican law, and that the FBI does not have a domestic investigation into RIVERA's alleged conduct.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of September, 2024, at Shelby, Montana.

CINTHIA GUTIERREZ

3

# EXHIBIT A

7/6/23

1. Agentes Especiales del Buró Federal de Investigaciones me han solicitado que les permita llevar a cabo un registro completo de:

2021 Chevrolet Silverado  CA 27622E3

11524 ½ Adco Ave. Apt D Downey, CA 90241
Garage / Cochera

2. Se me ha notificado que tengo el derecho a rehusar a dar mi consentimiento.

3. Otorgo este consentimiento voluntariamente.

4. Autorizo a estos agentes a llevarse cualquier artículo que determinen esté relacionado con su investigación.

Firma X

Testigo/Witness :

TRANSLATION

7/6/23

[handwritten]

1. Special agents from the Federal Bureau of Investigations have asked me to allow them to conduct a thorough search of:

   2021 Chevrolet Silverado CA 27622E3

   11524 ½ Adco Ave., Apt. D, Downey, CA 90341
   Garage / Carport

2. I have been notified that I have the right to refuse to consent.

3. I give my consent voluntarily.

4. I authorize these agents to take any items that they determine to be connected with their investigation.

Signature **X** [signature]
Witness/*witness:* [signature]

**DECLARATION AND CERTIFICATION OF TRANSLATOR**

I, Esther M. Hermida, declare that I am a U.S. District Court Certified Spanish Interpreter.

I am certified to interpret from English into Spanish and from Spanish into English.

I further certify that I have translated the attached document from Spanish into English, and the translation is true and accurate to the best of my knowledge:


**One page handwritten letter in Spanish titled: RIVERA – Consent to Search.**


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration is signed this 29th day of August 2024, at Dana Point, California.

Esther M. Hermida, FCCI, CCCI

## **DECLARATION OF JOHN J. LULEJIAN**

I, John J. Lulejian, declare as follows:

1.    I am an Assistant United States Attorney and am assigned to represent the United States of America in the matter of United States v. Rivera, Case No. 2:23-cv-08153-MCS-KS.  I make this declaration in support of the United States' Consolidated Opposition to Relator's (1) Motion to Suppress Evidence and (2) Motion to Reconsider the Court's Order Denying the Motion to Compel.

2.    In addition to representing the United States of America in the above-captioned matter, I have assisted the U.S. Department of Justice, Office of International Affairs ("OIA") by handling requests submitted by the Government of the United Mexican States to obtain evidence for the prosecution of BRYANT RIVERA, also known as "Eduardo" ("RIVERA"), in that nation.

3.    Based on my communications with the FBI and OIA, I am not aware of any independent U.S. investigation into RIVERA's alleged criminal conduct.

4.    I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of September, 2024, at Los Angeles, California.


                                   /s/John J. Lulejian
                                   JOHN J. LULEJIAN