E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
      1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-0721
      Facsimile:  (213) 894-0141
      E-mail:    John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cv-8153-MCS-KS |
|---|---|
| Plaintiff, | UNITED STATES' REPLY IN SUPPORT OF REQUEST FOR CERTIFICATION OF EXTRADITABILITY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN J. LULEJIAN; EXHIBITS |
| v. | |
| BRYANT RIVERA,<br>  aka "Eduardo," | |
| A Fugitive from the Government of the United Mexican States. | [18 U.S.C. § 3184]<br><br>Hearing Date: October 1, 2024<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the Honorable Karen L. Stevenson |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney John J. Lulejian, hereby submits its Reply in Support of its Request for Certification of Extraditability.

     The Reply is based on the Memorandum of Points and Authorities, and all of the documents and exhibits previously lodged and filed

under seal and publicly with the Court (in original and redacted forms), which include the documents submitted by the Government of the United Mexican States ("Mexico") in support of its request for extradition in this matter.

Dated:   September 10, 2024         Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/ John J. Lulejian
JOHN J. LULEJIAN
MITCHELL M. SULIMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                  PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   ARGUMENT......................................................3

      A.    The Offense Underlying the Extradition Request Is
            Extraditable............................................3

            1.    The Treaty Covers the Offense.....................3

            2.    RIVERA's Rule of Specialty Claim Is Meritless.....8

      B.    Probable Cause Exists to Believe that RIVERA Committed
            the Offense of Femicide.................................9

            1.    Legal Standard for Probable Cause.................9

            2.    The Evidence Supports a Finding of Probable Cause...11

      C.    This Court Properly Denied RIVERA's Motion to Compel
            Discovery..............................................14

      D.    Any Humanitarian Considerations are Within the
            Secretary of State's Sole Consideration, Pursuant to
            the Rule of Non-Inquiry................................15

            1.    RIVERA's Citation to the CAT to Defeat
                  Certification is Misplaced........................15

            2.    RIVERA's Limited Due Process Rights Do Not Bar
                  Extradition.......................................18

            3.    The Court Should Not Be the First to Violate the
                  Rule of Non-Inquiry by Applying a Purported
                  "Humanitarian Exception".........................22

      E.    The Treaty is Not of Void for Vagueness................30

III.  CONCLUSION....................................................32

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

FEDERAL CASES

Ahmad v. Wigen,
      910 F.2d 1063 (2d Cir. 1990)............................ 12, 26

Arnbjornsdottir-Mendler v. United States,
      721 F.2d 679 (9th Cir. 1983)................................ 23

Atuar v. United States,
      156 F. App'x 555 (4th Cir. 2005)........................... 18

Austin v. Healey,
      5 F.3d 598 (2d Cir. 1993) .................................. 10

Barapind v. Enomoto,
      360 F.3d 1061, 1076 (9th Cir. 2004),
      on reh'g en banc, 400 F.3d 744 (9th Cir. 2005) .......... 8, 25

Basic v. Steck,
      819 F.3d 897 (6th Cir.),
      cert. denied, 137 S. Ct. 196 (2016)........................ 12

Blair v. United States,
      972 F.2d 1337 (9th Cir. 1992)............................... 8

Blaxland v. Commonwealth Dir. of Pub. Prosecutions,
      323 F.3d 1198 (9th Cir. 2003)............................... 27

Benson v. McMahon,
      127 U.S. 457 (1888) ........................................ 10

Boumediene v. Bush,
      553 U.S. 723 (2008)......................................... 19

Charlton v. Kelly,
      229 U.S. 447 (1913) .................................... 10, 15

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

Clarey v. Gregg,

    138 F.3d 764 (9th Cir. 1998)............................. 4, 7

Collins v. Loisel,

    259 U.S. 309 (1922) ............................... 3, 10, 15

Cucuzzella v. Keliikoa,

    638 F.2d 105 (9th Cir. 1981).......................... 4, 5, 6

Dep't of Navy v. Egan,

    484 U.S. 518 (1988)...................................... 28

Dhiab v. Bush,

    No. 05-1457(GK), 2008 WL 4905489

    (D.D.C. Nov. 17, 2008)................................... 20

Doe v. Mattis,

    928 F.3d 1 (D.C. Cir. 2019)............................... 20

Escobedo v. United States,

    623 F.2d 1098 (5th Cir. 1980)......................... 18, 25

Factor v. Laubenheimer,

    290 U.S. 276 (1933)....................................... 5

Gallina v. Fraser,

    278 F.2d 77 (2d Cir. 1960)................................ 26

Gallina v. Sessions,

    No. 18-cv-11359, 2018 WL 3350342

    (D.N.J. July 9, 2018)..................................... 16

Gerstein v. Pugh,

    420 U.S. 103 (1975)...................................... 10

Glucksman v. Henkel,

    221 U.S. 508 (1911) .........................................

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                                    PAGE

Grin v. Shine,
    187 U.S. 181 (1902)...................................... 4, 11

Hamdi v. Rumsfeld,
    542 U.S. 507 (2004)......................................... 20

Hilton v. Kerry,
    754 F.3d 79 (1st Cir. 2014)........................ 20, 21, 27

In re Appl. for Order for Judicial Assistance in
    Foreign Proceeding in Labor Ct. of Braz.,
    466 F. Supp. 2d 1020 (N.D. Ill. 2006)..................... 12

In re Assarsson,
    635 F.2d 1237 (7th Cir. 1980).............................. 13

In re Extradition of Burt,
    737 F.2d 1477 (7th Cir. 1984).......................... 19, 21

In re Extradition of Jimenez,
    No. 14-2319-SAG, 2014 WL 7239941
    (D. Md. Dec. 16, 2014).................................... 12

In re Extradition of Kirby,
    106 F.3d 855 (9th Cir. 1996).............................. 31

In re Extradition of Knotek,
    No. 2:16-cv-0139204-BRO-JCG, 2016 WL 4726537
    (C.D. Cal. Sept. 8, 2016)................................. 8

In re Extradition of Manzi,
    888 F.2d 204 (1st Cir. 1989)............................ 6, 20

In re Extradition of Martinelli Berrocal,
    No. 17-22197, 2017 WL 3776953
    (S.D. Fla. Aug. 31, 2017)................................. 19

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

In re Extradition of Marzook,
      924 F. Supp. 565 (2d Cir. 1996)............................. 27

In re Extradition of McMullen,
      989 F.2d 603 (2d Cir. 1993)................................ 18

In re Extradition of Robertson,
      No. 11-MJ-0310-KJN, 2012 WL 5199152
      (E.D. Cal. Oct. 19, 2012)................................. 12

In re Extradition of Solis,
      402 F. Supp. 2d 1128 (C.D. Cal. 2005)..................... 16

In re Kaine,
      55 U.S. (14 How.) 103 (1852).............................. 20

In re Petition of Geisser,
      627 F.2d 745 (5th Cir. 1980).............................. 21

Hoxha v. Levi,
      465 F.3d 554 (3d Cir. 2006)........................... 16, 23

Jhirad v. Ferrandina,
      536 F.2d 478 (2d Cir. 1976) .............................. 18

Johnson v. United States,
      576 U.S. 591 (2015)....................................... 30

Juarez-Saldana v. United States,
      700 F. Supp. 2d 953 (W.D. Tenn. 2010)..................... 16

Kelly v. Griffin,
      241 U.S. 6 (1916).......................................... 3

Kolender v. Lawson,
      461 U.S. 352 (1983)....................................... 31

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                      PAGE

Koskotas v. Roche,
    931 F.2d 169 (1st Cir. 1991)................................ 12

Lopez-Smith v. Hood,
    121 F.3d 1322 (9th Cir. 1997)........................... 21, 23

Mainero v. Gregg,
    164 F.3d 1199 (9th Cir. 1999) ............................. 26

Manta v. Chertoff,
    518 F.3d 1134 (9th Cir. 2008) .............................. 5

Martin v. Warden,
    993 F.2d 824 (11th Cir. 1993)............................. 25

Martinez v. United States,
    828 F.3d 451 (6th Cir. 2016) (en banc)..................... 5

Masopust v. Fitzgerald,
    No. 2:09-cv-1495, 2010 WL 324378
    (W.D. Pa. Jan. 21, 2010).................................. 16

Mathews v. Eldridge,
    424 U.S. 319 (1976)....................................... 20

McElvy v. Civiletti,
    523 F. Supp. 42 (S.D. Fla. 1981).......................... 4

Medellín v. Texas,
    552 U.S. 491 (2008)....................................... 16

Meza v. U.S. Atty. Gen.,
    693 F.3d 1350 (11th Cir. 2012)............................ 23

Mironescu v. Costner,
    480 F.3d 664 (4th Cir. 2007).............................. 16

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

Munaf v. Geren
    553 U.S. 674 (2008).................................... passim

Neely v. Henkel,
    180 U.S. 109 (1901)................................. 18, 24

Noeller v. Wojdylo,
    922 F.3d 797 (7th Cir. 2019).......................... 25

Omar v. McHugh,
    646 F.3d 13 (D.C. Cir. 2011).......................... 16

Oteiza v. Jacobus,
    136 U.S. 330 (1890)................................... 15

Parsons v. Feather,
    No. 13-01905, 2014 WL 2123983
    (D. Or. May 19, 2014)................................. 16

Perez v. Mims,
    No. 1:16-cv-00447, 2016 WL 3254036
    (E.D. Cal. June 14, 2016)............................. 16

Peroff v. Hylton,
    542 F.2d 1247 (4th Cir. 1976)......................... 29

Plaster v. United States,
    720 F.2d 340 (4th Cir. 1983).......................... 21

Prasoprat v. Benov,
    421 F.3d 1009 (9th Cir. 2005) ................. 17, 22, 25, 26

Prasoprat v. Benov,
    294 F. Supp. 2d 1165 (C.D. Cal. 2003),
    aff'd, 421 F.3d 1009 (9th Cir. 2005) ...................... 25

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

Quinn v. Robinson,

    783 F.2d 776 (9th Cir. 1986) ........................... 10, 25

Raffington v. Cangemi,

    399 F.3d 900 (8th Cir. 2005)............................... 16

Rana v. Jenkins,

    ___ F.4th ____, No. 23-1827, 2024 WL 3819946

    (9th Cir. Aug. 15, 2024)................................. 4, 7

Romeo v. Roache,

    820 F.2d 540 (1st Cir. 1987)............................... 21

Sainez v. Venables,

    588 F.3d 713 (9th Cir. 2009)........................... 10, 13

Santos v. Thomas,

    830 F.3d 987 (9th Cir. 2016) (en banc) ................. passim

Sessions v. Dimaya,

    584 U.S. 148 (2018)....................................... 31

Sindona v. Grant,

    619 F.2d 167 (2d Cir. 1980)............................. 26, 29

Skaftouros v. United States,

    667 F.3d 144 (2d Cir. 2011)............................... 12

Skilling v. United States,

    561 U.S. 358 (2010) ...................................... 30

Spatola v. United States,

    741 F. Supp. 362 (E.D.N.Y. 1990),

    aff'd, 925 F.2d 615 (2d Cir. 1991)......................... 28

viii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

Sridej v. Blinken,
    No. 2:23-cv-00114-ART-BNW,
    2023 WL 4421376 (D. Nev. July 10, 2023)..................... 20

Sridej v. Blinken,
    No. 23-16021, 2024 WL 3509288
    (9th Cir. July 23, 2024)................................... 5

Toledo v. U.S. Dep't of State,
    No. CV 23-627 (BAH), 2023 WL 2663016
    (D.D.C. Mar. 28, 2023)..................................... 20

Trinidad y Garcia v. Thomas,
    683 F.3d 952 (9th Cir. 2012) (en banc).............. 22, 25, 29

United States v. Chemical Found.,
    272 U.S. 1 (1926)......................................... 29

United States v. Knotek,
    925 F.3d 1118 (9th Cir. 2019).............................. 3

United States v. Lui Kin-Hong,
    110 F.3d 103 (1st Cir. 1997) ................... 22, 27, 28, 30

United States v. Mincoff,
    574 F.3d 1186 (9th Cir. 2009)............................. 30

United States v. Najohn,
    785 F.2d 1420 (9th Cir.),
    cert. denied, 479 U.S. 1009 (1986)........................ 8

United States v. Williams,
    553 U.S. 285 (2008)....................................... 30

United States v. Van Cauwenberghe,
    827 F.2d 424 (9th Cir.1987)............................... 8

ix

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                        PAGE

Venckiene v. United States,

    929 F.3d 843 (7th Cir. 2019)................................ 28

Yacaman Meza v. U.S. Att'y Gen.,

    693 F.3d 1350 (11th Cir. 2012)............................. 16


FEDERAL COURT DOCUMENTS

United States v. Arauz Suazo,

    No. 1:22-mj-00204-SKC (D. Colo.),

    Order, dated May 31, 2023.................................. 7

United States v. Contreras Gutierrez,

    No. 3:20-mj-02658-LS (W.D. Tex.)

    Certification & Committal, dated Aug. 3, 2021............... 7

United States v. Payan Rivera,

    No. 3:23-mj-03051-MAT (W.D. Tex.),

    Memorandum and Order, dated May 1, 2024.................... 7

United States v. Vazquez,

    No. 2:20-mj-00722-VRG (W.D. Tex.),

    Certification & Committal, dated Dec. 2, 2021.............. 7


FEDERAL STATUTES

18 U.S.C. § 1111............................................... 6

18 U.S.C. § 3184....................................... 18, 19, 22

18 U.S.C. § 3186.............................................. 22


FEDERAL CODES

22 C.F.R. § 95.1(a)........................................... 15

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

22 C.F.R. § 95.3(b)................................................  29


STATE STATUTES

Cal. Penal Code § 187...............................................   6

Cal. Penal Code § 187(a)............................................   6

Cal. Penal Code §§ 187-89...........................................   6

Cal. Penal Code § 189...............................................   6

Cal. Penal Code § 190(a)............................................   6

Cal. Penal Code § 664...............................................   6


FOREIGN STATUTES

Baja Crim. Code, art. 14(II) .......................................   1

Baja Crim. Code, art. 16(I) ........................................   1

Baja Crim. Code, art. 114 ..........................................   1

Baja Crim. Code, art. 114 bis ......................................   1

Baja Crim. Code, art. 129(II) ................................... 1, 11

Baja Crim. Code, art. 129(VI) ......................................   1


TREATIES

Extradition Treaty Between the United States of America and

    the United Mexican States, U.S.-Mex., May 4, 1978,

    31 U.S.T. 5059, as amended by the Protocol to the

    Extradition Treaty Between the United States of America

    and the United Mexican States of May 4, 1978, U.S.-Mex.,

    Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998)......... passim

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

INTERNATIONAL AUTHORITY

U.S. Dep't of State, Treaties in Force (2020)................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Pursuant to its extradition treaty with the United States (the
"Treaty"),[1] the government of the United Mexican States ("Mexico")
seeks the extradition of fugitive BRYANT RIVERA, also known as
"Eduardo" ("RIVERA"), to stand trial for the crime of femicide, also
referred to as feminicide, as provided for and penalized by Articles
14(II), 16(I), 114, 114 bis, and 129(II) and (VI) of the Criminal
Code of the State of Baja California, Mexico ("Baja Criminal Code").
(Dkt. 24-2 at 18-20.)  As the United States previously explained
(<u>see</u> Dkt. 32 at 30-34), the requirements for certifying RIVERA's
extradition have been met.  RIVERA does not dispute that this Court
is authorized to conduct the extradition proceeding, that this Court
has jurisdiction over him, or that the Treaty is in full force and
effect.

RIVERA disputes only whether probable cause exists and whether
the Treaty covers the offense for which Mexico seeks his extradition
(Dkt. 54 at 10-18.)  He also asserts that due process bars his
extradition because of the Court's decision not to order discovery
(<u>id.</u> at 18); that the Court should decline to certify his
extradition for humanitarian reasons (<u>id.</u> at 18-33); and that the
Treaty is void for vagueness because it allows for the extradition
of U.S. citizens (<u>id.</u> at 34-37).

The record in this case and the relevant case law make clear

---

[1] Extradition Treaty Between the United States of America and
the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, <u>as
amended by</u> the Protocol to the Extradition Treaty Between the United
States of America and the United Mexican States of May 4, 1978, U.S.-
Mex., Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998).

that RIVERA's claims are meritless.

First, the underlying law of femicide for which RIVERA is being
prosecuted is an offense covered by the Treaty.  Femicide, which
derives from homicide/murder, qualifies as an offense listed in the
Appendix of the Treaty.  Also, because both U.S. federal and
California state law would prohibit RIVERA's conduct had he
committed it in the United States, the requirements of dual
criminality are satisfied.  Furthermore, because he has not been
extradited, RIVERA lacks standing to raise a claim under the rule of
specialty.

Second, it is undisputed that RIVERA's relationship with each
victim was one of client and sex worker.  According to Mexican
authorities that relationship satisfies the last element of the
offense.  Under the relevant caselaw, this Court should not
reinterpret femicide as RIVERA urges, but instead defer to Mexico's
interpretation of its own laws.

Third, as a matter of law, RIVERA is not entitled to the
evidence he seeks.  The Court's well-reasoned decision to deny
RIVERA discovery is proper, does not violate due process, and should
not be disturbed.

Fourth, under the rule of non-inquiry, RIVERA's humanitarian
concerns are within the sole consideration of the Secretary of State
pursuant to the rule of non-inquiry.  Further, not only does a claim
pursuant to the Convention Against Torture and Other Cruel, Inhuman
or Degrading Treatment or Punishment ("CAT" or "Convention Against
Torture") not alter the rule of non-inquiry, but even if such a
claim warranted judicial review, it is premature and not before the
Court.

Finally, the void for vagueness doctrine, which applies in criminal cases, is not applicable in extradition matters.  However, if it did, RIVERA cannot demonstrate that extradition process, which involves the judicial and executive branches and applies to both U.S. and non-U.S. citizens, is not indefinite, arbitrary, or discriminatory.

Accordingly, the United States respectfully requests that the Court certify RIVERA's extradition to Mexico for the Secretary of State's consideration.

## II.  ARGUMENT

### A.  The Offense Underlying the Extradition Request Is Extraditable

#### 1.  The Treaty Covers the Offense

As noted in the United States' Extradition Memorandum, the Treaty lists 31 offenses in an Appendix.  (Dkt. 32 at 31 (citing Dkt. 24-1 at 39-41.))  Article 2 of the Treaty states that willful acts are extraditable if they are (1) in the Appendix and punishable in both countries by deprivation of liberty for at least one year, or (2) not in the Appendix but punishable under the federal laws of both countries by deprivation of liberty for at least a year  (id. at 23) – in other words, there must be dual criminality.  See, e.g., United States v. Knotek, 925 F.3d 1118, 1128-29 (9th Cir. 2019).

A requesting country is not obliged to establish that its crimes are identical to ours.  See Kelly v. Griffin, 241 U.S. 6, 15 (1916).  The Supreme Court noted in Collins v. Loisel that dual criminality is not a technical concept involving a comparison of elements of the two countries' offenses:

> The law does not require that the name by which the crime
> is described in the two countries shall be the same; nor
> that the scope of the liability shall be coextensive, or,
> in other respects, the same in the two countries.  It is
> enough if the particular act charged is criminal in both
> jurisdictions.

259 U.S. 259 U.S. 309, 312 (1922).  Thus, "[b]inding Ninth Circuit precedent instructs that, for purposes of the dual criminality provision, 'the elements of the analogous offenses need not be identical.'" Rana v. Jenkins, ___ F.4th ____, No. 23-1827, 2024 WL 3819946, at *5 (9th Cir. Aug. 15, 2024) (quoting Clarey v. Gregg, 138 F.3d 764, 766 (9th Cir. 1998)).  "When the laws of both the requesting and the requested party appear to be directed to the same basic evil, the statutes are substantially analogous and can form the basis of dual criminality." Clarey, 138 F.3d at 766 (citations omitted).

Dual criminality exists if the conduct underlying the foreign offense would be criminal under United States federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states.  See Cucuzzella v. Keliikoa, 638 F.2d 105, 107-08 (9th Cir. 1981).

A court should "approach challenges to extradition with a view toward finding the offense within the treaty," McElvy v. Civiletti, 523 F. Supp. 42, 48 (S.D. Fla. 1981), "because extradition treaties should be interpreted with a view to fulfil our just obligations to other powers." Grin v. Shine, 187 U.S. 181, 184 (1902).  Thus, to prevail on his dual criminality challenge, RIVERA would have to demonstrate that the offense for which he is sought is unambiguously

non-extraditable.  See, e.g., Factor v. Laubenheimer, 290 U.S. 276, 293-94 (1933); Martinez v. United States, 828 F.3d 451, 463 (6th Cir. 2016) (en banc) (citing cases); Cucuzzella, 638 F.2d at 107 n.3 (noting the principle that "treaties should be construed to enlarge the rights of the parties").  He fails to do so.

Here, the Appendix to the Treaty broadly lists "Murder or manslaughter; abortion."  (Dkt. 24-1 at 39, ¶1.)  It is immaterial that the Treaty does not contain the word "femicide."  As RIVERA acknowledges, femicide "was not codified in Baja California until 2012 and well after the Treaty's most recent amendment."  (Dkt. 54 at 11.)  Nonetheless, because femicide is a specific type of murder, one that is gender-based, and is codified under Title I of Baja Criminal Code, entitled "Crimes Against Life, Health, and Human Dignity," it certainly would fall under the general offense of murder.  Thus, the Appendix lists the charged offense, and the offense is extraditable.

Even if the Appendix did not list murder, the laws in both countries punish the conduct underlying the extradition request with at least one year imprisonment.

In determining whether an offense is punishable under the laws of the United States so as to be dually criminal, courts properly look to the underlying conduct to determine whether they violate United States federal law, the law of the state in which the hearing is held, or the law of the preponderance of the states.  See, e.g., Sridej v. Blinken, No. 23-16021, 2024 WL 3509288, at *1 (9th Cir. July 23, 2024) ("Because Sridej's alleged conduct would be criminal in both Thailand and the United States, we conclude that the fraud charges are extraditable offenses"); Manta v. Chertoff, 518 F.3d 1134, 1141 (9th Cir. 2008)  ("[I]t is enough that the conduct

1  involved is criminal in both countries.")(quotation omitted);

2  <u>Cucuzzella</u>, 638 F.2d at 107; <u>In re Extradition of Manzi</u>, 888 F.2d

3  204, 207 (1st Cir. 1989) ("this court has held that double

4  criminality requires only "that the acts upon which the . . . charges

5  are based are proscribed by similar provisions of federal law,

6  [state] law or the law of the preponderance of the states") (internal

7  quotations and citation omitted).

8       Although there is no law entitled femicide in the United States,

9  both U.S. federal and California state law still would prohibit

10 RIVERA's conduct had he committed it in the United States.  RIVERA's

11 conduct could be charged as homicide under 18 U.S.C. § 1111, which

12 carries a maximum penalty of life imprisonment.  <u>See</u> 18 U.S.C.

13 § 1111.  Alternatively, RIVERA could be charged with murder in the

14 first degree under Cal. Penal Code §§ 187-89, which carries a maximum

15 penalty of life imprisonment.  <u>See</u> Cal. Penal Code § 190(a).[2]

16 Likewise, under the Baja Criminal Code, RIVERA faces a maximum

17

18

---

19      [2] For example, William Lester Suff, also known as the "Riverside
   Prostitute Killer" and the "Lake Elsinore Killer," was convicted in
20 Riverside County Superior Court of twelve counts of first-degree
   murder, pursuant to Cal. Penal Code §§ 187(a) and 189, and one count
21 of attempted murder, pursuant to Cal. Penal Code §§ 664 and 187.  <u>See</u>
   <u>People v. Suff</u>, 324 P.3d 1, 8-9 (Cal. 2014).[2]  Suff's victims, like
22 RIVERA's victims, were female sex workers who were asphyxiated.  <u>See</u>
   <u>id.</u> at 9.
23
24      Other states also prosecuted serial killers who preyed on women
   using existing murder statutes.  <u>See, e.g.,</u> <u>Bundy v. State</u>, 455 So.
25 2d 330, 334 (Fla. 1984) (Florida courts found "Theodore Robert Bundy
   guilty of two counts of first-degree murder, three counts of
26 attempted first degree murder, and two counts of burglary");
   https://kingcounty.gov/en/legacy/depts/sheriff/about-
27 us/enforcement/investigations/green-river ("Gary Leon Ridgway pled
   guilty to 48 counts of Aggravated Murder in the First Degree" in
28 Washington) (last visited on Sept. 8, 2024).

1  sentence of 60 years imprisonment if convicted of femicide.  (Dkt.

2  24-2 at 18-19.)  This ends the inquiry.[3]

3      Trying to draw a distinction between femicide and homicide,

4  RIVERA claims that "murder and femicide do not have the same

5  essential character and are not substantially analogous." (Dkt. 54

6  at 11).  However, it is immaterial that the Mexican offense of

7  femicide includes elements not required for domestic murder statutes.

8  See, e.g., Rana, 2024 WL 3819946, at *5.  At its heart, the offense

9  of femicide addresses the deprivation of life.  (Dkt. 24-2 at 9.)

10 Because both femicide and murder "appear to be directed to the same

11 basic evil," the statutes are substantially analogous and satisfy

12 dual criminality.  Clarey, 138 F.3d at 766 (citations omitted).[4]

13     Accordingly, RIVERA's dual criminality challenge fails.

14

15     [3] In fact, in several other cases, courts have certified
16 extradition for the offense of femicide.  See Memorandum and Order,
   United States v. Payan Rivera, No. 3:23-mj-03051-MAT (W.D. Tex. May
17 1, 2024) (certifying extradition to Mexico for femicide);
   Certification & Committal, United States v. Vazquez, No. 2:20-mj-
18 00722-VRG (W.D. Tex. Dec. 2, 2021) (certifying extradition to Mexico
   for femicide); see also Order, United States v. Arauz Suazo, No.
19 1:22-mj-00204-SKC (D. Colo. May 31, 2023) (certifying extradition to
   Costa Rica for attempted femicide); Certification & Committal, United
20 States v. Contreras Gutierrez, No. 3:20-mj-02658-LS (W.D. Tex. Aug.
   3, 2021) (certifying extradition to Mexico for aggravated homicide
21 with gender motivation).  Copies of these documents are attached to
   the Declaration of John J. Lulejian, dated 09/10/2024 ("Lulejian
22 Decl."), as Exhibits A through D.

       [4] This conclusion appears to be supported by two of the Mexican
23 judgments upon which RIVERA relies.  According to the Supreme Court
   of Justice of the Nation, femicide is derived from homicide, and it
24 "shares certain of homicide's essential elements (for example, taking
   the life of a person)," (Dkt. 54 at 13; 54-5 at 12.)  In another
25 judgment, that court determined that femicide and homicide "do
   correspond to crimes against life, and, in the way that they are
26 structured as crimes, they have certain similarities. Article 148A
   [femicide] is a special crime, derived from Article 123 [homicide],
27 and thus shares some of its defining elements (for example, taking of
   a life)."  (Dkt. 54-5 at 12.)  These two judgments support the
28 proposition that femicide is a subset of homicide and that both
   femicide and homicide address the same evil:  the taking of life.

1          2.   <u>RIVERA's Rule of Specialty Claim Is Meritless</u>[5]

2          RIVERA also asserts that the certification of his

3    extraditability is barred by the Rule of Specialty because he

4    speculates that he may face additional charges in Mexico.  (Dkt. 54

5    at 14-15.)   This assertion is premature because RIVERA has not been

6    extradited, and  RIVERA lacks standing to raise it.

7          "The Rule of Specialty prohibits a requesting nation from

8    prosecuting an extradited individual for any offense other than that

9    for which the surrendering state agreed to extradite."  <u>Blair v.</u>

10   <u>United States</u>, 972 F.2d 1337, ___ (9th Cir. 1992) (citing <u>United</u>

11   <u>States v. Van Cauwenberghe</u>, 827 F.2d 424, 428 (9th Cir.1987)); <u>see</u>

12   <u>Barapind v. Enomoto</u>, 360 F.3d 1061, 1076 (9th Cir. 2004), <u>on reh'g en</u>

13   <u>banc</u>, 400 F.3d 744 (9th Cir. 2005) ("[t]he doctrine of specialty

14   prohibits [a] requesting nation from prosecuting [an] extradited

15   individual for any offense other than that for which the surrendering

16   state agreed to extradite.")(internal citation and quotation marks

17   omitted).  "The doctrine is based on international comity, and its

18   protections exist only to the extent that the surrendering country

19   wishes."  <u>Id.</u> (citing <u>United States v. Najohn</u>, 785 F.2d 1420, 1422

20   (9th Cir.), <u>cert. denied</u>, 479 U.S. 1009 (1986))  Therefore, "this

21   doctrine is to be applied by the Secretary of State, not the court of

22   certification."  <u>In re Extradition of Knotek</u>, No. 2:16-cv-0139204-

23   BRO-JCG, 2016 WL 4726537, at *6 (C.D. Cal. Sept. 8, 2016) (citing

24   <u>Barapind</u>, 360 F.3d at 1077.

25

26

27
─────────────────────
          [5] This rule is also referred to as the Rule of Speciality.  <u>See</u>
28   <u>In re Extradition of Handanovic</u>, 829 F. Supp. 2d 979, 991 (D. Or.
     2011).

1    In other words, until a relator is extradited, he or she lacks

2    standing to assert a breach of the rule of specialty.  Handanovic,

3    829 F. Supp. at 979 (D. Or. 2011) ("[relator] has not yet been

4    extradited.  Therefore, she has no standing to raise this issue now.

5    If any purported violation of [article related to the Rule of

6    Speciality] were to occur following [relator's] extradition, the

7    Secretary of State would be responsible for enforcing the

8    [extradition treaty] based on the Rule of Speciality.").

9    In the instant case, the Court has not certified RIVERA as

10   extraditable.  Nor has the Secretary of State agreed to surrender

11   RIVERA.  Thus, any claims that RIVERA will be prosecuted for murders

12   other than the two detailed in the extradition request if he is

13   surrendered to Mexico is speculative.  Accordingly, RIVERA's claim

14   must fail.

15       **B.   Probable Cause Exists to Believe that RIVERA Committed the**

16            **Offense of Femicide**

17            1.   Legal Standard for Probable Cause

18                 As this Court has observed,

19       An extradition proceeding is not a trial; the relevant

20       determination is confined to whether a prima facie case of

21       guilt exists that is sufficient to make it proper to hold

22       the extraditee for trial.  The function of the committing

23       magistrate is to determine whether there is competent

24       evidence to justify holding the accused to await trial, and

25       not to determine whether the evidence is sufficient to

26       justify a conviction.

27   In re Extradition of Acevedo, No. ED CV 16-1766-R(KS), 2017 WL

28   3491749, *10 (C.D. Cal. Aug. 11, 2017) (quotations and citations

omitted).   Pursuant to controlling Supreme Court and Ninth Circuit precedent, this Court should evaluate the facts of this case using the same probable cause standard it applies in domestic cases.   See, e.g., Santos v. Thomas, 830 F.3d 987, 991 (9th Cir. 2016) (en banc) ("The Supreme Court has described these extradition hearings to determine probable cause as akin to a grand jury investigation or a preliminary hearing under Federal Rule of Criminal Procedure 5.1.") (citing Charlton v. Kelly, 229 U.S. 447, 461-62 (1913); Benson v. McMahon, 127 U.S. 457, 463 (1888)); Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (court considers where there are "facts and circumstances sufficient to warrant a prudent man in believing that [RIVERA] had committed or was committing an offense.") (internal quotation marks and citation omitted).

To this end, "[t]he magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense."[6] Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986).   In other words, "'[t]he magistrate's function is to determine whether there is any evidence sufficient to establish reasonable or probable cause.'" Acevedo, 2017 WL 3491749 at *10 (quoting Sainez v. Venables, 588 F.3d 713, 717 (9th Cir. 2009)).

---

[6] The country requesting extradition is not obligated to send all of its evidence to the United States or to conduct a dress rehearsal of its case before the U.S. extradition court.   See Collins, 259 U.S. at 316; Austin v. Healey, 5 F.3d 589, 605 (2d Cir. 1993) ("[T]he foreign government is not required to present its entire case in this country.   The evidence presented need only 'support a reasonable belief that [the fugitive] was guilty of the crime[s] charged.'"), cert. denied, 510 U.S. 1165 (1994).

2.   <u>The Evidence Supports a Finding of Probable Cause</u>

As detailed in the extradition request, the offense of femicide requires proof of three elements.  (Dkt. 24-2 at 9-10.)  First, the prosecution must prove "[t]he deprivation of life of one or various women."  (<u>Id.</u> at 9.)  Second, the prosecution must prove that the deprivation of life was "[i]ntentionally committed."  (<u>Id.</u>)  Third, the prosecution must prove that the crime was committed "[f]or gender reasons."  (<u>Id.</u> at 10.)  This last element may be proved by demonstrating that "[t]here had been a labor relationship between the perpetrator and the victim, such as a teacher and student, or any other that implies confidence, subjection, or superiority."  (<u>Id.</u> at 9 (citing Article 129(II) of Baja Criminal Code.)

Here, the submissions from Mexico explain that, under Mexican law, the relationship between a client and a sex worker qualifies to satisfy the last element.  (Dkt. 24-2 at 33.)

RIVERA does not dispute that his relationship with each victim was one of client and sex worker.  Rather, he cites the opinion of a Mexican lawyer in his employ, who asserts that, under the Mexican femicide statute, a voluntary agreement to exchange sex for money does not "in-and-of-itself imply subordination or superiority" and thus, does not satisfy the third element.  (Dkt. 54 at 17 (quoting Dkt. 54-5 at 15).)  On this basis, RIVERA asks the Court to reject Mexico's interpretation of its own law.  (Dkt. 54 at 16-17.)

RIVERA's claim must fail because it is well-settled that it is not the role of a U.S. court to opine on a foreign government's interpretation of its own law.  <u>See, e.g.</u>, <u>Grin</u>, 187 U.S. at 190 ("[I]t can hardly be expected of us that we should become conversant with the criminal laws of [the requesting country], or with the forms

11

Case 2:23-cv-08153-MCS-KS    Document 58    Filed 09/10/24    Page 26 of 48    Page ID
#:2539

of warrants of arrest used for the apprehension of criminals.");
Basic v. Steck, 819 F.3d 897, 901 (6th Cir.) (concluding that "[w]e
will not second guess th[e] determination" by the Government of
Bosnia that a "[d]irective to find and arrest" the fugitive
constituted the "arrest warrant" required under the applicable
extradition treaty), cert. denied, 137 S. Ct. 196 (2016); Skaftouros
v. United States, 667 F.3d 144, 160 n.20 (2d Cir. 2011) (noting that
"we defer to the Greek courts, which may consider whether [the
fugitive] or the Greek prosecutors have the better of the argument"
regarding whether the warrant underlying the extradition request was
valid under Greek law); In re Extradition of Jimenez, No. 14-2319-
SAG, 2014 WL 7239941, at *1-2 (D. Md. Dec. 16, 2014) (rejecting
relator's claim that extradition to Costa Rica not permitted under
relevant treaty because sentence has lapsed, noting that court would
not "question the reliability or trustworthiness of a judicial decree
from a foreign nation" which stated that sentence had not lapsed); In
re Extradition of Robertson, No. 11-MJ-0310-KJN, 2012 WL 5199152, at
*7-12 (E.D. Cal. Oct. 19, 2012) (committing relator for extradition
for enforcement of sentence, and declining to examine Canadian law
and Canada's representation that "long term supervision order" forms
part of relator's sentence and is not separate from it).

The principle that a foreign country should not be required to
prove to a U.S. judge that it is properly construing its own laws is
supported by general notions of international comity and respect for
foreign nations' sovereignty.  See Koskotas v. Roche, 931 F.2d 169,
174 (1st Cir. 1991); Ahmad v. Wigen, 910 F.2d 1063, 1067-68 (2d Cir.
1990); In re Appl. for Order for Judicial Assistance in Foreign
Proceeding in Labor Ct. of Braz., 466 F. Supp. 2d 1020, 1028 (N.D.

1   Ill. 2006) ("American courts should treat foreign law the way
2   American courts want foreign courts to treat American law: avoid
3   determining foreign law whenever possible."). It is further
4   supported by the prudential policy of avoiding the high risk that a
5   U.S. court might erroneously interpret the law of a foreign country.
6   See Sainez, 588 F.3d at 717; In re Assarsson, 635 F.2d 1237, 1244
7   (7th Cir. 1980). Thus, when faced with competing interpretations of
8   foreign law, the Court must defer to its foreign counterpart.

9       Here, moreover, Mexico's submissions establish probable cause to
10  believe that RIVERA (1) deprived both victims of life;
11  (2) intentionally; and (3) had a labor relationship with each of
12  them, namely, a client-sex worker relationship. Both victims, Flores
13  and Cigarroa, were sex workers at the Hong Kong Gentleman's Club.
14  Both victims separately entered into transactions with RIVERA to
15  exchange sex for money. Shortly before their deaths, both victims
16  told their families and/or co-workers that they were going to meet
17  with a client for sex. Further, RIVERA was the last person seen with
18  both victims before the discovery of their bodies.

19      Accordingly, probable cause exists to believe that RIVERA
20  committed the crime of femicide against both victims.

21      Finally, for the reasons set forth in the United States'
22  Consolidated Opposition to Relator's (1) Motion to Suppress Evidence
23  and (2) Motion to Reconsider the Court's Order Denying the Motion to
24  Compel, this Court should not suppress any evidence seized during the
25  consent search of RIVERA's vehicle.[7] Even if the Court were to

26

27      [7] RIVERA claims that the Ninth Circuit's en banc decision in
28  Santos v. Thomas allows for the exclusion of evidence for extradition
    hearings. (Dkt. 54 at 17.) However, RIVERA's reliance on this case
    *(footnote cont'd on next page)*

13

suppress that evidence, ample evidence remains that RIVERA frequented
the Hong Kong Gentlemen's Club, that he was at the club with Flores
on the day of her murder, that he arrived at Hotel Cascades with
Flores and using an alias, registered for a hotel room, that he went
to room 404 of the hotel with Flores, that he left that room a few
hours later without Flores, and that no one else exited the room
until prior to the discovery of Flores' body.[8]

Accordingly, the materials from Mexico establish probable cause.

**C.    This Court Properly Denied RIVERA's Motion to Compel
        Discovery**

On January 31, 2024, following briefing and a hearing, this
Court denied RIVERA's motion to compel discovery in a comprehensive
opinion (Dkt. 46).   RIVERA now seeks reconsideration of that opinion,
claiming the existence of a U.S. criminal investigation into his
alleged conduct.   (Dkt. 53 at 3-5.)   The United States previously
briefed, and incorporates by reference, its position concerning why
the discovery RIVERA requested would be improper.   Likewise, the
United States filed today, and incorporates by reference, its
position concerning why the reconsideration RIVERA requests would be
improper.   Moreover, even if RIVERA were to obtain and proffer
additional evidence, and even if this Court were to exclude such

_____

is misplaced because Santos only addressed statements allegedly
obtained under coercion and torture, 830 F.3d at 1001-07, neither of
which are present here.  Moreover, given the Ninth Circuit's
admonition that its holding is "narrow," id. at 1008, the appellate
court's decision should not be expanded for use in the manner sought
by RIVERA.

[8] According to an employee of Hotel Cascadas, the same company
owned both the Hong Kong Gentlemen's Club and the hotel, and most of
the time the hotel rooms were occupied by clients with dancers from
the Hong Kong bar, who worked as sex workers.  (Dkt. 24-1 at 10; 24-2
at 14; 24-4 at 3.)

1    evidence, "[m]ere errors in the rejection of evidence," even if they

2    occur, "are not subject to review by a writ of habeas corpus."

3    Charlton, 229 U.S. at 457; see Collins, 259 U.S. at 316 ("[W[rongful

4    exclusion of specific pieces of evidence, however important, does not

5    render [a fugitive's] detention illegal."); Oteiza v. Jacobus, 136

6    U.S. 330, 334 (1890) ("A writ of habeas corpus in a case of

7    extradition cannot perform the office of a writ of error.").

8         Accordingly, for the reasons articulated in the United States'

9    opposition briefing, RIVERA's pursuit of discovery is meritless.

10        **D.   Any Humanitarian Considerations are Within the Secretary of**

11             **State's Sole Consideration, Pursuant to the Rule of Non-**

12             **Inquiry**

13        RIVERA asks this Court to decline to certify extradition based

14   on his claims about the danger he may face if extradited to Mexico.

15   (Dkt. 54 at 25-34.)  But doing so would require the Court to exceed

16   its limited role in the extradition process and, moreover, would

17   conflict with well-settled precedent reserving consideration of such

18   claims for the Secretary of State.

19        1.   RIVERA's Citation to the CAT to Defeat Certification

20             is Misplaced

21        RIVERA's claim that the CAT precludes the Court from certifying

22   his extradition must fail.[9]  (Dkt. 54 at 18-19.)

23

24

---

25        [9]    The CAT entered into force for the United States in
     November 1994.  U.S. Dep't of State, Treaties in Force (2020) (copy
26   attached to Lulejian Decl. ¶ 2, Exh. E); 22 C.F.R. § 95.1(a).
     Article 3 of that convention provides, in relevant part, that "[n]o
27   State Party shall expel, return ('refouler') or extradite a person to
     another State where there are substantial grounds for believing that
28   he would be in danger of being subjected to torture."  S. Treaty Doc.
     No. 100 20, at 20 (1988).

15

1    The CAT is not self-executing and therefore does not itself

2   create any rights enforceable in U.S. courts. Omar v. McHugh, 646

3   F.3d 13, 17 (D.C. Cir. 2011) (Kavanaugh, J.); Raffington v. Cangemi,

4   399 F.3d 900, 903 (8th Cir. 2005); 136 Cong. Rec. 36,198 (Oct. 27,

5   1990) (ratification statement) ("Articles 1 through 16 of the

6   Convention [Against Torture] are not self-executing."); see Medellín

7   v. Texas, 552 U.S. 491, 505 n.2 (2008) (explaining that a "'non-self-

8   executing' treaty does not by itself give rise to domestically

9   enforceable federal law" and that "[w]hether [a non-self-executing]

10  treaty has domestic effect depends upon implementing legislation

11  passed by Congress.")

12    Moreover, the CAT's implementing legislation "clearly

13  preclude[s] the district court from exercising jurisdiction" over

14  such claims except in immigration removal cases. Mironescu v.

15  Costner, 480 F.3d 664, 674 (4th Cir. 2007).

16    RIVERA offers no legal authority to suggest that a CAT claim

17  alters the rule of non-inquiry, and extradition courts routinely

18  decline to review such claims. See, e.g., Yacaman Meza v. U.S. Att'y

19  Gen., 693 F.3d 1350, 1356-57 (11th Cir. 2012); Mironescu, 480 F.3d at

20  677; Hoxha, 465 F.3d at 565; Gallina v. Sessions, No. 18-cv-11359,

21  2018 WL 3350342, at *2 (D.N.J. July 9, 2018); Perez v. Mims, No.

22  1:16-cv-00447, 2016 WL 3254036, at *2-7 (E.D. Cal. June 14, 2016);

23  Parsons v. Feather, No. 13-01905, 2014 WL 2123983, at *4-5 (D. Or.

24  May 19, 2014); Juarez-Saldana v. United States, 700 F. Supp. 2d 953,

25  957-61 (W.D. Tenn. 2010); Masopust v. Fitzgerald, No. 2:09-cv-1495,

26  2010 WL 324378, at *3 (W.D. Pa. Jan. 21, 2010); In re Extradition of

27  Solis, 402 F. Supp. 1128, 1132 (C.D. Cal. 2005).

28

1    Even if RIVERA's CAT claim were subject to judicial review, the

2   claim is premature in the instant case because the Secretary of State

3   has not even considered RIVERA's case yet, and RIVERA will not be

4   extradited if the Secretary determines that torture is likely.  Cf.

5   Munaf v. Geren, 553 U.S. 674, 702 (2008) (crediting government's

6   representation that "it is the policy of the United States not to

7   transfer an individual in circumstances where torture is likely to

8   result," and that such determinations rely on "the Executive's

9   assessment of the foreign country's legal system and the Executive's

10  ability to obtain foreign assurances it considers reliable.").

11  Rather, the Secretary merely has authorized the extradition process

12  to begin.  See Santos, 830 F.3d at 991 ("If the State Department

13  determines that the request falls within the governing extradition

14  treaty, a U.S. Attorney files a complaint in federal district court

15  indicating an intent to extradite and seeking a provisional warrant

16  for the person sought.").  The Secretary has not decided whether

17  RIVERA should be surrendered, nor could he until this Court issues a

18  certificate of extraditability, and that certificate becomes the

19  final order of the Court.  See id. at 993 ("If the extradition court

20  determines that there is probable cause to extradite, it enters an

21  order certifying extradition to the Secretary of State, who

22  ultimately decides whether to surrender the individual to the

23  requesting state."); Prasoprat v. Benov, 421 F.3d 1009, 1016 (9th

24  Cir. 2005) ("Once the magistrate judge determines that the crime is

25  extraditable and there is probable cause to sustain the charge, it is

26  the Secretary of State, representing the executive branch, who

27  determines whether to surrender the fugitive.") (internal footnote,

28  quotation, and citation omitted).  Any argument as to why the

17

1  Secretary should deny extradition in this case is thus unripe.  See
2  Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not
3  ripe for adjudication if it rests upon contingent future events that
4  may not occur as anticipated, or indeed may not occur at all.").

5      Accordingly, any claim that the CAT bars RIVERA's
6  extradition is not properly before the Court.

7          2.    RIVERA's Limited Due Process Rights Do Not Bar
8             Extradition

9      RIVERA also claims that his Due Process Rights as guaranteed by
10 the Fifth Amendment bar extradition where there is a substantial
11 likelihood that he will be subject torture in Mexico.  (Dkt. 54 at
12 21-25.)  This claim also fails.

13     While a fugitive has certain due process rights in an
14 extradition proceeding, those rights are highly circumscribed, as
15 extradition proceedings do not involve a determination of guilt or
16 innocence.  See Neely v. Henkel, 180 U.S. 109, 122 (1901); Jhirad v.
17 Ferrandina, 536 F.2d 478, 482 (2d Cir. 1976); Atuar v. United States,
18 156 F. App'x 555, 562 (4th Cir. 2005).  In terms of the due process
19 requirements triggered at an extradition proceeding, a fugitive is
20 entitled to the guarantees of 18 U.S.C. § 3184, namely, "notice in
21 the form of a 'complaint . . .' as well as a hearing at which
22 'evidence of criminality may be heard and considered.'"  In re
23 Extradition of McMullen, 989 F.2d 603, 612 (2d Cir. 1993) ("Before
24 [a] determination [regarding surrender] is made, [a fugitive] is
25 entitled to the due process protections of an extradition proceeding,
26 including notice in the form of a 'complaint . . .' as well as a
27 hearing at which 'evidence of criminality may be heard and
28 considered.'") (quoting 18 U.S.C. § 3184); see also Escobedo v.

United States, 623 F.2d 1098, 1105 (5th Cir. 1980) (stating that "[t]hese statutory provisions [set forth in 18 U.S.C. § 3184] safeguard the fugitive's due process rights"). The full panoply of due process rights available to criminal defendants is not available to fugitives because an extradition proceeding culminates in a "surrender" to the foreign government, rather than in criminal punishment of any sort. Id.

In general, during extradition proceedings, "[d]ue process is not violated 'so long as the United States has not breached a specific promise to an accused regarding his or her extradition, and bases its extradition decisions on diplomatic considerations without regard to such constitutionally impermissible factors as race, color, sex, national origin, religion, or political beliefs, and in accordance with such other exceptional constitutional limitations as may exist because of particularly atrocious procedures or punishments employed by the foreign jurisdiction.'" In re Extradition of Martinelli Berrocal, No. 17-22197, 2017 WL 3776953, at *27 (S.D. Fla. Aug. 31, 2017) (quoting In re Extradition of Burt, 737 F.2d 1477, 1487 (7th Cir. 1984) (internal citations omitted)).

In this case, there is no dispute that RIVERA's arrest for purposes of extradition was obtained by way of complaint, or that an extradition hearing will occur before a magistrate judge, as 18 U.S.C. § 3184 provides.

The fact that the Court will hold an extradition hearing distinguishes this case from the enemy combatant cases on which RIVERA relies (and relied upon in his motion to compel discovery). In those cases, the courts were concerned about the classification of individuals as enemy combatants or their transfer without the

19

1  involvement of the judiciary.  See Boumediene v. Bush, 553 U.S. 723

2  (2008); Hamdi v. Rumsfeld, 542 U.S. 507 (2004) (plurality); Doe v.

3  Mattis, 928 F.3d 1 (D.C. Cir. 2019); Dhiab v. Bush, No. 05-1457(GK),

4  2008 WL 4905489, *1 (D.D.C. Nov. 17, 2008).  Here, in contrast,

5  RIVERA's "liberty interests are protected by the very existence of

6  'an unbiased hearing before an independent judiciary.'"  Sridej v.

7  Blinken, No. 2:23-cv-00114-ART-BNW, 2023 WL 4421376, *6 (D. Nev.

8  July 10, 2023) (quoting In re Kaine, 55 U.S. (14 How.) 103 (1852)).

9  Further, because RIVERA will have a hearing before a neutral

10 magistrate judge, the balancing test the Supreme Court set forth in

11 Mathews v. Eldridge, 424 U.S. 319 (1976) in not necessary.  See

12 Toledo v. U.S. Dep't of State, No. CV 23-627 (BAH), 2023 WL 2663016,

13 at *8 (D.D.C. Mar. 28, 2023) (rejecting fugitive's claim to

14 additional due process rights under Mathews, noting that "courts to

15 have considered the totality of the United States' extradition

16 process have easily concluded that this combination of the judicial

17 and executive branch proceedings comports with the requirements of

18 the Fifth Amendment . . . ." (citations omitted)).

19     RIVERA is receiving all the due process to which the law

20 entitles him.  This Court should therefore reject RIVERA's attempt to

21 claim more due process than what the law provides.  See Hilton v.

22 Kerry, 754 F.3d 79, 87 (1st Cir. 2014) ("No case law suggests that

23 courts have the authority to go beyond the limited statutorily

24 prescribed inquiry [to consider a due process claim] when the

25 extradition itself is the only action challenged.") (internal

26 quotation marks and citation omitted).  In fact, courts repeatedly

27 have declined to expand the scope of due process that applies in

28 international extradition proceedings.  See, e.g., Manzi, 888 F.2d at

206 (finding that fugitive's claims did not raise due process claims
warranting review); Romeo v. Roache, 820 F.2d 540, 543-44 (1st Cir.
1987) (rejecting fugitive's argument that "elemental due process is
violated when a person lacking the capacity . . . to participate
effectively in [an extradition proceeding] is certified as
extraditable"); Lopez-Smith v. Hood, 121 F.3d 1322, 1324 (9th Cir.
1997) ("Criminal trial of an incompetent defendant violates his
constitutional right to due process of law.  This principle, though,
does not apply to [the fugitive], because if extradited he will not
be subject to a criminal trial in the United States.  His trial will
be in Mexico.  That sovereign nation has its own constitution and is
not bound by ours.") (citations omitted); Burt, 737 F.2d at 1482-87
(rejecting claims that considerable delay in extradition violated due
process).  The rare cases in which courts have found due process
violations involved United States action "apart from the act of
extradition itself." Hilton, 754 F.3d at 87 (finding no due process
violation where fugitive challenged U.S. actions in pursuing his
extradition despite his claim that the conditions in the requesting
country would have deleterious effects on his mental health); see
Plaster v. United States, 720 F.2d 340, 348 & 350-51 (4th Cir. 1983)
(remanding extradition case for consideration of due process claim
based on government's violation of immunity agreement); In re
Petition of Geisser, 627 F.2d 745, 750 (5th Cir. 1980) (finding that
noncompliance with plea bargain is valid constitutional claim that
may be raised to challenge extradition proceedings and that "a
purported treaty obligation of the United States government cannot
override an individual constitutional right").  RIVERA has alleged no
comparable government action in this case.

1    Accordingly, RIVERA's "due process" claim is meritless.

2        3.    <u>The Court Should Not Be the First to Violate the Rule</u>

3                  <u>of Non-Inquiry by Applying a Purported "Humanitarian</u>

4                  <u>Exception"</u>

5    As detailed above and in the United States' prior pleadings,

6 extradition is a two-step process in which a court first determines

7 whether "there is probable cause to extradite" based on the relevant

8 legal requirements, and then the Secretary of State "decides whether

9 to surrender the individual to the requesting state." <u>Santos</u>, 830

10 F.3d at 993.  This division is reflected in the statutory framework

11 for extradition, wherein only the Secretary of State, and not the

12 judiciary, may make the discretionary decision of whether the

13 fugitive "may . . . be delivered" to the requesting country.  18

14 U.S.C. § 3186; <u>see</u> 18 U.S.C. § 3184.

15    Such discretion is properly placed in the hands of the Secretary

16 given "the Executive's powers to conduct foreign affairs," which

17 include the ability to "make confidential diplomatic inquiries and

18 receive confidential diplomatic assurances about the treatment of an

19 extraditee." <u>Trinidad y Garcia v. Thomas</u>, 683 F.3d 952, 961 (9th

20 Cir. 2012) (en banc) (per curiam) (Thomas, J., concurring).

21 Questions about the treatment a fugitive may face upon his return to

22 the requesting country may be considered only by the Secretary in

23 making the discretionary decision regarding surrender.  <u>See, e.g.</u>,

24 <u>United States v. Kin-Hong</u>, 110 F.3d 103, 108 (1st Cir. 1997)

25 (following the court's certification decision, "[i]t is then within

26 the Secretary of State's sole discretion to determine whether or not

27 the relator should actually be extradited" based on, <u>inter alia</u>,

28 "humanitarian and foreign policy considerations"); <u>cf.</u> <u>Prasoprat</u>, 421

F.3d at 1016 ("The magistrate judge has no discretionary decision to
make.") (internal quotation marks and citation omitted).

Such questions are not yet ripe for review by an extradition
court, as the Secretary of State has not yet decided whether to
surrender the fugitive to the requesting country. See, e.g., Meza v.
U.S. Atty. Gen., 693 F.3d 1350, 1356 (11th Cir. 2012) ("There is
nothing in the record to suggest that the Secretary has decided
whether to surrender [the fugitive]. [The fugitive's] claim about
torture is not ripe."); Hoxha, 465 F.3d at 565 (declining to address
Albanian fugitive's claim that he would be tortured and possibly
killed by Albanian authorities on ripeness grounds). Indeed, a
decision by the Secretary not to surrender the fugitive would moot
any concerns about his return to the requesting country.

Regardless, the Supreme Court, the Ninth Circuit, and myriad
other courts have established that, under the rule of non-inquiry,
questions concerning the treatment a fugitive may face in the
requesting country lie beyond the limited purview of the judiciary in
extradition matters. See Lopez-Smith, 121 F.3d at 1327 (courts
generally refrain from examining penal systems of requesting
nations); Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683
(9th Cir. 1983) ("The rationale is that such matters are to be
determined solely by the executive branch"), superseded by statute on
other grounds, Pub. L. No. 105-277, § 2242, 1999 U.S.C.C.A.N. (112
Stat. 2681). Over a century ago, the Supreme Court explained that
U.S. courts "are bound by the existence of an extradition treaty to
assume that the trial will be fair." Glucksman v. Henkel, 221 U.S.
508, 512 (1911). More recently, in Munaf v. Geren, the Supreme Court
re-affirmed that it is appropriate for the Secretary of State alone

23

to assess practices in the requesting country and the likelihood of
an individual being tortured after his transfer there.   553 U.S. 674,
700-01 (2008) (citing Neely, 180 U.S. at 123).   In that case, which
involved a due process challenge to the transfer of U.S. citizens
detained by U.S. military officials within Iraq to Iraqi officials
for prosecution, the Court specifically rejected the detainees'
argument that principles of non-inquiry were overcome by their
allegations that they would likely be tortured if transferred to
Iraq.  Id. at 700.  "Such allegations are of course matters of
serious concern, but . . . that concern is to be addressed by the
political branches, not the judiciary."  Id.

According to the Supreme Court, "[t]he Judiciary is not suited
to second-guess" determinations by the State Department regarding the
likelihood that those transferred to the custody of a foreign
government would be tortured—determinations that "would require
federal courts to pass judgment on foreign justice systems and
undermine the Government's ability to speak with one voice in this
area."  Id. at 702.  The Court stressed that, "[i]n contrast, the
political branches are well situated to consider sensitive foreign
policy issues, such as whether there is a serious prospect of torture
at the hands of an ally, and what to do about it if there is."  Id.

The Ninth Circuit, like other courts, has "long adhered to the
rule of non-inquiry," concluding that "it is the role of the
Secretary of State, not the courts, to determine whether extradition
should be denied on humanitarian grounds or on account of the
treatment that the fugitive is likely to receive upon his return to

1  the requesting state." Prasoprat, 421 F.3d at 1016.[10]  Indeed, the

2  Ninth Circuit unequivocally held in Prasoprat that a "magistrate

3  judge does not have any discretion" to deny extradition on

4  humanitarian grounds.  Id.  Similarly, a claim that humanitarian

5  concerns bar extradition "is not cognizable on habeas corpus."

6  Prasoprat v. Benov, 294 F. Supp. 2d 1165, 1171 (C.D. Cal. 2003),

7  aff'd, 421 F.3d 1009; see also, e.g., Trinidad, 683 F.3d at 956-57,

8  (rule of non-inquiry limits "the scope of habeas review") (emphasis

9  omitted).  Rather, once an extradition has been certified, "it is the

10  Secretary of State, representing the executive branch, who determines

11  whether to surrender the fugitive." Prasoprat, 421 F.3d at 1016.

12

13

14      [10] See also, e.g., Quinn, 783 F.2d at 789-90 (Secretary of State
    has "sole discretion . . . to refuse extradition on humanitarian
15  grounds because of the procedures or treatment that await a
    surrendered fugitive"); Barapind, 360 F.3d at 1077 ("The government
16  of the United States, through the Secretary of State, should
    determine . . . whether diplomatic and treaty relations are being
17  carried out and respected in such a way that it is safe to surrender
    an alleged criminal under a treaty.") (quoting In re Lincoln, 228 F.
18  70, 74 (E.D.N.Y. 1915)), on reh'g en banc, 400 F.3d 744 (9th Cir.
    2005); Martin v. Warden, 993 F.2d 824, 830 n.10 (11th Cir. 1993)
19  (reaffirming adherence to principles that "judicial intervention in
    extradition proceedings based on humanitarian considerations is
20  inappropriate" and that such considerations "are matters properly
    reviewed by the Department of State"); Noeller v. Wojdylo, 922 F.3d
21  797, 808 (7th Cir. 2019) ("Under the settled rule of non-inquiry, the
    executive branch has sole authority to consider such humanitarian
22  considerations in deciding on extradition requests. . . . [It] is
    intended to prevent extradition courts from engaging in improper
23  judgments about other countries' law enforcement and judicial
    procedures.  More important, the rule serves interests of
24  international comity by relegating to political actors the sensitive
    foreign policy judgments that are often involved in the question of
25  whether to refuse an extradition request.") (internal quotation marks
    and citation omitted); Escobedo, 623 F.2d at 1107 ("[T]he degree of
26  risk to [the fugitive's] life from extradition is an issue that
    properly falls within the exclusive purview of the executive
27  branch.").

28

1    RIVERA's attempt to circumvent this well-settled precedent is

2    unavailing.  The notion that courts may make an exception to the rule

3    of non-inquiry for particularly egregious humanitarian concerns is

4    based entirely on dictum from a decision by the Second Circuit well

5    over half a century ago — dictum that posits the theoretical

6    possibility of an exception that has never in fact been used to deny

7    extradition, and which the Second Circuit itself has since disavowed.

8    Compare Gallina v. Fraser, 278 F.2d 77, 79 (2d Cir. 1960) ("We can

9    imagine situations where the relator, upon extradition, would be

10   subject to procedures or punishment so antipathetic to a federal

11   court's sense of decency as to require reexamination of the

12   principle" that an extraditing court will not inquire into the

13   procedures awaiting a surrendered fugitive in the requesting

14   country), with Sindona v. Grant, 619 F.2d 167, 175 (2d Cir. 1980)

15   ("The fact that Gallina also added the caveat that some situations

16   were imaginable in which a federal court might wish to reexamine the

17   principle of exclusive executive discretion falls well short of a

18   command to do so here.") (citation omitted), and Ahmad, 910 F.2d at

19   1067 ("The interests of international comity are ill-served by

20   requiring a foreign nation such as Israel to satisfy a United States

21   district judge concerning the fairness of its laws and the manner in

22   which they are enforced . . . .  It is the function of the Secretary

23   of State to determine whether extradition should be denied on

24   humanitarian grounds." (internal citation omitted)).

25   Notably, the Prasoprat Court highlighted that "we have never

26   actually 'relied on [the posited possibility] to create' such an

27   exception."  421 F.3d at 1016 (rejecting the possibility articulated

28   in Mainero v. Gregg, 164 F.3d 1199, 1210 (9th Cir. 1999), and other

1   cases).  The Ninth Circuit is not alone.  "No court has yet applied

2   such a theoretical <u>Gallina</u> exception."  <u>Hilton</u>, 754 F.3d at 87.

3        Moreover, cogent reasons exist for refusing to implement the

4   theoretical "humanitarian exception."  Adopting a "humanitarian

5   exception" would require courts to opine not on the legality of

6   extradition — which is their traditional and exclusive function — but

7   on the wisdom or virtue of it.  The exception would also require

8   extensive judicial exploration of the conditions in a foreign

9   country.  Neither inquiry is consistent with the narrowly

10  circumscribed judicial role in extradition matters.  <u>See, e.g.</u>,

11  <u>Glucksman</u>, 221 U.S. at 512.  Indeed, the statutory commitment of the

12  surrender decision to the Secretary's discretion reflects a

13  recognition that the decision necessarily involves the application of

14  particular expertise that is not available in the judiciary and

15  sensitive foreign relations considerations that are not amenable to

16  judicial review.  As the Ninth Circuit has recognized, "[u]nwarranted

17  expansion of judicial oversight may interfere with foreign policy and

18  threaten the ethos of the extradition system."  <u>Blaxland v.</u>

19  <u>Commonwealth Dir. of Pub. Prosecutions</u>, 323 F.3d 1198, 1208 (9th Cir.

20  2003).

21       Further, in the United States, "[i]t is not that questions about

22  what awaits the relator in the requesting country are irrelevant to

23  extradition; it is that there is another branch of government, which

24  has both final say and greater discretion in these proceedings, to

25  whom these questions are more properly addressed."  <u>Kin-Hong</u>, 110

26  F.3d at 111.  "Were it the other way, an argument could be made that

27  the [extradition] statute improperly assigns foreign affairs powers

28  to the Judiciary."  <u>In re Extradition of Marzook</u>, 924 F. Supp. 565,

571 (S.D.N.Y. 1996); see, e.g., Dep't of Navy v. Egan, 484 U.S. 518,
529 (1988) (foreign policy is the "province and responsibility of the
Executive") (citation omitted).

Moreover, U.S. courts themselves recognize that, in general,
judicial officers in the United States are not accustomed to
considering, and are not well-equipped to consider, claims regarding
the treatment a fugitive may face in the requesting country. See,
e.g., Munaf, 553 U.S. at 702-03 (noting that "the other branches
possess significant diplomatic tools and leverage the judiciary
lacks") (citation omitted); Kin-Hong, 110 F.3d at 110 (noting that
"extradition proceedings contain legal issues peculiarly suited for
judicial resolution, such as questions of the standard of proof,
competence of evidence, and treaty construction, yet simultaneously
implicate questions of foreign policy, which are better answered by
the executive branch"); Spatola v. United States, 741 F. Supp. 362,
371 (E.D.N.Y. 1990) ("[S]ince comity—i.e., respect and cooperation
between sovereign nations—is at the very heart of extradition, a
judicial proceeding in extradition is not the proper vehicle for
challenging or questioning the fairness of another country's criminal
justice system"), aff'd, 925 F.2d 615 (2d Cir. 1991).

Any attempt to distinguish RIVERA's humanitarian claim from all
of the other previous ones that have failed to abrogate the rule of
non-inquiry is unavailing. To the contrary, his claim bears factual
similarities to some of those previous claims. See, e.g., Venckiene
v. United States, 929 F.3d 843, 864-65 (7th Cir. 2019) ("To the
extent [the fugitive] contend[s] that she will be subject to physical
harm from sources outside the [requesting country's] government,
these are humanitarian arguments that are in the purview of the

28

Secretary of State in extradition proceedings."); <u>Sindona</u>, 619 F.2d at 174 (rejecting claim that extradition should be denied because "return to Italy would subject [the fugitive] to risk of murder or injury at the hands of political enemies"); <u>Peroff v. Hylton</u>, 542 F.2d 1247, 1249 (4th Cir. 1976) (rejecting claim that extradition should be denied because there were "potential assassins in Swedish prisons").  His articulation of his challenge as being directed specifically to the United States' conduct in deciding to surrender him despite his claims regarding possible treatment in the requesting country is similarly not novel.[11]  <u>See, e.g.</u>, <u>Trinidad</u>, 683 F.3d at 955, 957 (due process challenge to "extradition" to the requesting country and specifically the Secretary of State's "extradition decision"); <u>cf.</u> <u>Munaf</u>, 553 U.S. at 692 (due process challenge to United States' transfer of Iraqi detainees).  No court has held that the rule of non-inquiry is inapplicable in such circumstances.

     In short, RIVERA has presented no cogent reason, let alone any authority, for this Court to deviate from the rule of non-inquiry. Accordingly, the Court should leave the humanitarian issues RIVERA raises to be resolved by the Secretary of State, who can draw on his ambassadors and all the other resources of the State Department to best evaluate the risks RIVERA may face if surrendered to Mexico, and who alone has the power to impose conditions on surrender in order to mitigate any such risks.  <u>See</u> 22 C.F.R. § 95.3(b) ("Based on . . . analysis of relevant information, the Secretary may decide to

---

     [11] RIVERA wrongly assumes that the Secretary will extradite him to face a substantial likelihood of harm, but the courts have long recognized the presumption that the decisions of government officials are made in good faith.  <u>United States v. Chemical Found.</u>, 272 U.S. 1, 14-15 (1926).

1  surrender the fugitive to the requesting State, to deny surrender of
2  the fugitive, or to surrender the fugitive subject to conditions."); 
3  Kin-Hong, 110 F.3d at 110 (noting that "[t]he State Department alone,
4  and not the judiciary, has the power to attach conditions to an order
5  of extradition" and recognizing that the Secretary "may also elect to
6  use diplomatic methods to obtain fair treatment for the relator").

7       Accordingly, RIVERA's claim that the Court may circumvent the
8  rule of non-inquiry must fail.

9       **E.  The Treaty is Not of Void for Vagueness**

10       "A law is unconstitutionally vague if it fails to provide a
11  reasonable opportunity to know what conduct is prohibited, or is so
12  indefinite as to allow arbitrary and discriminatory enforcement."
13  United States v. Mincoff, 574 F.3d 1186, 1201 (9th Cir. 2009); see
14  also Skilling v. United States, 561 U.S. 358, 412 (2010) (void for
15  vagueness doctrine "addresses concerns about (1) fair notice and (2)
16  arbitrary and discriminatory prosecutions").  The government violates
17  the Fifth Amendment when a "criminal law [is] so vague that it fails
18  to give ordinary people fair notice of the conduct it punishes, or so
19  standardless that it invites arbitrary enforcement."  Johnson v.
20  United States, 576 U.S. 591, 595 (2015).  A statute is not void for
21  vagueness merely because its applicability is unclear at the margins,
22  or because reasonable jurists might disagree on where to draw the
23  line in particular circumstances.  See United States v. Williams, 553
24  U.S. 285, 305-06 (2008).

25       In this case, RIVERA attempts to shoehorn a principle applied
26  almost exclusively to evaluate criminal statutes to invalidate the
27  Treaty.  (Dkt. 54 at 34-37.)  Specifically, RIVERA takes issue with
28  Article 9(1) of the Treaty, which affords the requested state

discretion to grant extradition of its nationals.  The provision
states, "Neither Contracting Party shall be bound to deliver up its
own nationals, but the executive authority of the requested Party
shall, if not prevented by the laws of that Party, have the power to
deliver them up if, in its discretion, it be deemed proper to do so."
RIVERA's claim that the final clause of that article is void for
vagueness is without merit.

As a threshold matter, the void for vagueness doctrine, which
applies in criminal cases, is not applicable here because extradition
matters are not criminal.  See In re Extradition of Kirby, 106 F.3d
855, 867 (9th Cir. 1996) ("Extradition proceedings are not criminal
proceedings . . . ; no guilt or innocence is determined in them").
The United States could not locate, nor did RIVERA provide, any case
where a court evaluated any extradition treaty under that doctrine.
Moreover, the cases he cites are not applicable, as they involved,
either directly or indirectly, criminal statutes.  Sessions v.
Dimaya, 584 U.S. 148 (2018) involved a section of the immigration
code that included language that was similar to language in a
criminal statute that had been found to be unconstitutionally void
for vagueness.  Kolender v. Lawson, 461 U.S. 352 (1983), found the
language in a state criminal statute to be unconstitutionally vague.

In any event, the clause is not void for vagueness because the
extradition process is not indefinite, arbitrary, or discriminatory.
The underlying decision to certify a fugitive as extraditable lies
not with the executive branch, but with the judicial branch.  Under
this two-step process, the court will hold a hearing to determine
whether the requesting country satisfied the requirements for
extradition.  (The fugitive also will have the opportunity to file a

31

1   petition for habeas corpus, pursuant to 28 U.S.C. § 2241, whose

2   denial would be subject to appellate review.)  Separately, the

3   executive branch will determine whether surrendering the fugitive is

4   proper.  The Secretary of State will evaluate the findings of the

5   judicial branch, consider any concerns that the fugitive wishes to

6   raise, including humanitarian ones, and evaluate the political

7   ramifications of surrender.  Further, the Secretary will go through

8   this same process whether or not the person deemed extraditable is a

9   U.S. citizen.  Thus, the role of the Secretary is neither arbitrary

10  nor discriminatory.

11      Accordingly, RIVERA claim that the Treaty is void for vagueness

12  must fail.

13  **III. CONCLUSION**

14      For the foregoing reasons, the United States requests that the

15  Court certify that RIVERA is extraditable to Mexico on the offense

16  for which his extradition has been sought.

17   Dated: September 10, 2024        Respectfully submitted,

18                                    E. MARTIN ESTRADA
                                      United States Attorney
19
                                      MACK E. JENKINS
20                                    Assistant United States Attorney
                                      Chief, Criminal Division
21

22                                    */s/ John J. Lulejian*
                                      JOHN J. LULEJIAN
23                                    Assistant United States Attorney

24                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
25

26

27

28

                                     32

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the United States of America, certifies that this brief contains 9,094 words, which complies with the word limit set by court Order dated September 20, 2023 (Docket No. 20).


Dated: September 10, 2024        Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney

                                 MACK E. JENKINS
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                 */s/ John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

## DECLARATION OF JOHN J. LULEJIAN

I, John J. Lulejian, declare as follows:

1.    I am an Assistant United States Attorney and am assigned to represent the United States of America in the matter of United States v. Rivera, Case No. 2:23-cv-08153-MCS-KS.  I make this declaration in support of the United States' Reply in Support of Request for Certification of Extraditability.

2.    Attached hereto as exhibits are true and correct copies of the following documents:

    a.    Exhibit A:  Memorandum and Order, United States v. Payan Rivera, No. 3:23-mj-03051-MAT (W.D. Tex. May 1, 2024);

    b.    Exhibit B:  Certification & Committal, United States v. Vazquez, No. 2:20-mj-00722-VRG (W.D. Tex. Dec. 2, 2021);

    c.    Exhibit C:  Order, United States v. Arauz Suazo, No. 1:22-mj-00204-SKC (D. Colo. May 31, 2023);

    d.    Exhibit D:  Certification & Committal, United States v. Contreras Gutierrez, No. 3:20-mj-02658-LS (W.D. Tex. Aug. 3, 2021); and

    e.    Exhibit E:  excerpt from U.S. Dep't of State, Treaties in Force (2020).

3.    I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of September, 2024, at Los Angeles, California.

                                        /s/John J. Lulejian
                                        JOHN J. LULEJIAN